J. R. GRACEY v. A. W. HENDRIX.

No. 810. Decided June 19, 1899.

**1. Sale of School Land—Classification and Valuation.**

The classification of a survey of school land and its valuation at $2 per acre under article 4218j, Revised Statutes, was not annulled, nor was such land put on the market at $1.50 per acre, by the passage of the Act of 1897 (General Laws 1897, chapter 129, page 184), providing for a reclassification and revaluation of such land by the Commissioner of the General Land Office at not less than the latter price. (P. 30.)

**2. Same.**

Until the Commissioner had acted under the Act of 1897 by revaluing such land at a lower price, an applicant for its purchase acquired no rights by an application which complied with the requirements of the law for its purchase at $1.50 but not at $2 per acre. (P. 30.)

**3. Same—Revaluation—Effect on Pending Application.**

A revaluation of the land at $1.50 per acre, by the Commissioner, under such Act of 1897, did not make effective a pending application for its purchase at that rate, filed at a time when the former valuation at $2 was still in force; such application, not being in compliance with the law existing when it was made, did not bind the applicant. (Pp. 30, 31.)

ERROR to the Court of Civil Appeals for the Second District, in an appeal from Hall County.

Hendrix sued Gracey in trespass to try title. Defendant had judgment, and on plaintiff's appeal this was reversed and judgment rendered for appellant. Appellee Gracey thereupon obtained writ of error.

In the opinion of the Court of Civil Appeals, by Associate Justice STEPHENS, it was said:

"Appellant's right to the land was denied on the trial upon the sole ground that the price offered by him was less than that at which the land had been appraised; but it will be noted that his application to purchase was not rejected until after the price of the land had been reduced to a sum even less than that offered by him, and that an application contemporaneous with his own, made by one who was clearly not an actual settler, and hence not eligible as a purchaser, and which offered the same price, was accepted by the Commissioner of the General Land Office. We are therefore of the opinion that his application to purchase the land at $1.50 per acre, which was still pending and insisted upon after the price of the land had been reduced to $1 per acre, no right of the appellee having then intervened, entitled him to an award of the entire section."

*H. E. Deaver, J. R. Duke, and Plemons & Veale,* for plaintiff in error.—1. The purchase and sale of State school lands is between the law and the purchaser.  2. He must be such person as is described in the law as to being an actual settler, etc.  3. He must comply strictly with the law in his effort to purchase State school lands, and if the law has fixed a price for such lands he must tender to the State the price so fixed by the law.  4. The Commissioner of the General Land Office is not clothed by the law with discretionary powers in the matter of awarding the public lands of the State; his duties are prescribed, and when the purchaser places himself within the provisions and restrictions pointed out by the law, it is the duty of the Commissioner to make the sale to him.  Metzler v. Johnson, 1 Texas Civ. App., 141; Hitson v. Glasscock, 2 Texas Civ. App., 617; Throop on Pub. Off., secs. 21, 551; Cattle Co. v. Bacon, 79 Texas, 12.

An application to purchase State school land, to be of any benefit as a muniment of title, must show on its face that the purchaser offered to do and perform all that was then requisite and necessary under the law, as it was at the time of the filing of such application,—and it will avail him nothing if the Commissioner of the General Land Office should hold up such application until the law regarding the steps necessary to its purchase has been changed, and then attempt to make such application effective under the new regulations imposed after his application has been filed under a pre-existing law.  In fine, the application must conform to the requirements under the law under which it was made, and it can not be made to be effective under a law for which it was never intended.  Cattle Co. v. Bacon, 79 Texas, 12; Howard v. Austin & N. L. & Co., 24 S. W. Rep., 818; Norman v. McCleary, 30 S. W. Rep., 712.

*W. M. Pardue* and *Huff & Hall,* for defendant in error.—The law of 1897 and 1895 only requires that the land be classified as a condition precedent to its sale.  When this is done it is properly on the market

for sale to actual settlers. In the case of Cordell v. Moore, 43 Southwestern Reporter, 298, Judge Tarlton clearly shows that the classification is the only required condition precedent to placing school land on the market.

Much confusion and trouble had arisen under former acts with regard to valuation and appraisement, and, for the purpose of simplifying the matter, the Legislature did away with everything but the classification, and declared what the minimum price should be for each class. All the party desiring to purchase has to do is to make his application, and his rights attach. The Commissioner fixes the price. For the purpose of distinguishing the present act from the former law, we call the court's attention to sections 3, 4, 5, 6, etc., of the Act of 1887.

This court will not, we apprehend, disregard the certificate of the Commissioner, which shows that under the "Act of 1897" the land was classified with no appraisement affixed, and the further fact that he sold it to Gracey on August 20, 1897, at $1.50 per acre. The law fixed the price unless the Commissioner changed it. Did he do so? If so, when? The record does not show that he did, but on the contrary, shows that he sold it at the minimum price, and held it at that price, as he clearly had the right to do.

BROWN, Associate Justice.—Under the Act of 1887, survey number 104 of school land in Hall County was classified as dry agricultural land and valued at $2 per acre, at which price it was put upon the market, and remained on the market under that classification and price until the 23d day of August, 1897, except during the time that A. W. Hendrix claimed it under a purchase from the State, which was forfeited for nonpayment of the interest of 1893. On the 20th day of August, 1897, A. W. Hendrix was and had been for several years an actual settler upon the section of land, and on that day made an application to the Commissioner of the General Land Office to purchase it at the price of $1.50 per acre, which was filed in the General Land Office the next day. He remitted to the Treasurer of the State $24, the one-fortieth part of the whole purchase price, and he sent his obligation to the Commissioner of the General Land Office for $936, the remainder of the purchase price. If, however, he was entitled to purchase it at $1.50 per acre, his application, remittance, and obligation were in conformity with the statute. If the valuation of $2 per acre was then in force, he did not comply with the law.

J. R. Gracey filed in the General Land Office his application to purchase the east half of section 104 at $1.50 per acre and complied with the statute, if the price of $1.50 per acre had been the valuation placed upon the land at the time. Gracey was not an actual settler at the time he made the application, but subsequently moved upon the east half of the land and became an actual settler before the land was awarded to him by the Commissioner of the General Land Office.

On the 23d day of August, 1897, the section of land was reclassified

as dry grazing land and valued at $1.50 per acre. On September 10, 1897, the Commissioner of the General Land Office sold the east half to Gracey at $1.50 per acre and refused the application of A. W. Hendrix.

Hendrix brought suit against Gracey for the entire section of land, who disclaimed as to the west half but claimed the east half for himself. The trial was had before the judge without a jury, who gave judgment in favor of Gracey, which judgment the Court of Civil Appeals reversed and rendered it in favor of A. W. Hendrix for the east half of the land.

The question in the case is, did Hendrix, by his application, remittance of a part of the price, and execution of his obligation for the balance, acquire a right to purchase section 104? If he did, the judgment of the Court of Civil Appeals is right, because, in that event, Gracey could not have subsequently acquired any right to the east half of the survey. If, however, Hendrix did not acquire a right to purchase the land by his application and proceedings connected therewith, then the judgment of the District Court was correct, although Gracey may not have acquired any right himself. Hendrix must recover in this suit upon the strength of his own title and not because Gracey has none.

Article 4218j, Revised Civil Statutes, prescribes the mode of procedure by which an actual settler upon the public free school land may acquire a right thereto, as follows: "Any person desiring to purchase land in accordance with the provisions of this chapter shall forward his application to the Commissioner, describing the land sought to be purchased, which application shall be accompanied with the affidavit of the applicant, in effect that he desires to purchase the land for a home and has in good faith settled thereon, except where otherwise provided herein, and he shall also swear that he is not acting in collusion with others for the purpose of buying the land for any other person or corporation, and that no other person or corporation is interested in the purchase thereof. * * * The purchaser shall transmit to the Treasurer of the State one-fortieth of the aggregate purchase money for the particular tract of land and send to the Commissioner his obligation to the State, duly executed, binding the purchaser to pay the State on the first day of November of each year thereafter, until the whole purchase money is paid, one-fortieth of the aggregate price, with interest at the rate of three per cent per annum on the whole unpaid purchase money, which interest shall also be payable on the first day of November of each year; and upon receipt of one-fortieth of the purchase money by the Treasurer and the affidavit and obligation aforesaid by the Commissioner, the sale shall be deemed and held effective from the date the affidavit and obligation are filed in the General Land Office."

To comply with the requirements of the law, Hendrix must have made the affidavit and presented the application required by the statute and must have forwarded one-fortieth part of the purchase money for the whole section and his obligation for the remaining portion of the purchase price, as above stated. The land was valued at the time the ap-

plication, affidavit, and obligation were filed and the money paid in, at the price of $2 per acre, which would make an aggregate of $1280 for the section, the one-fortieth part of which would be $32, which he was required to have remitted to the Treasurer of the State, but he sent only $24, being $8 less than the amount required by law. The remainder of the price to be secured by the obligation would have amounted to $1248, but Hendrix gave his obligation only for $936, which was $312 less than was required by law. He did not comply with the law, and the sale did not become effective and confer a right upon him at the time that the papers were received by the Commissioner of the General Land Office.

It is claimed that the Act of 1897, "relating to leasing and selling the free school and asylum lands," (chapter 129, General Laws, 1897, page 184), had the effect to repeal or annul the former classification and valuation placed upon the land and to put it on the market for sale at $1.50 per acre. After empowering the Commissioner to classify any lands not before classified, the act provides: "He may also reclassify any lands heretofore erroneously classified, upon the official certificate of the commissioners court of the county in which said land is situated or the county to which said land is attached for judicial purposes certifying what the proper classification should be. * * * When any portion of said land has been classified to the satisfaction of the Commissioner of the General Land Office under the provisions of this chapter or former laws, said land shall be subject to sale. * * * All agricultural lands belonging to the public free school and the several asylum funds shall be sold at not less than $1.50 per acre; and all grazing lands shall be sold at not less than $1 per acre." This land having been previously classified and valued, the Commissioner could not have reclassified it except upon the certificate of the commissioners court of that county, and it was upon the market for sale upon the original classification and at the price previously fixed when Hendrix's application was filed in the General Land Office, unless that act had the effect to reduce the price of lands previously classified to the minimum stated therein. The law does not say that the lands of the given class shall not be sold for a price exceeding that named in the act, but prescribes that it shall not be sold for less than the sum stated per acre. It did not affect the valuations previously made for more than $1.50 per acre. The payment and obligation of Hendrix were not a compliance with the law at the time they were filed and presented to the officials of the State, and did not secure to him the right to purchase the land.

The honorable Court of Civil Appeals rests its judgment upon the proposition that the application, being on file, became effective when the classification and valuation were changed so as to make it a compliance with the conditions as thus changed. In this we think that honorable court committed error. The statute had prescribed the terms upon which the settlers might acquire a right without the concurrence of any official and had prescribed the standard of compliance to be the require-

ments of the law on the day that the papers were filed in the General Land Office. The language of the law is so explicit as to preclude construction and courts have no authority to change its terms. The obligation of Hendrix not being in compliance with the law, did not bind him, and he might have abandoned his application at any time. The right to the land did not, by the law, attach upon any day subsequent to that on which the papers were filed with the Commissioner of the General Land Office, because the law is not so written, and, if compliance was not had on that day, what was done subsequently would not inure to the benefit of a previously filed void application. Busk v. Lowrie, 86 Texas, 128; McKinney v. Grassmeyer, 51 Texas, 376; Wright v. Hawkins, 28 Texas, 470. ·

Hendrix, the plaintiff in the court below, acquired no right to the section of land, and was therefore not entitled to recover, although the defendant, Gracey, may not have acquired any legal right himself, upon which it is not necessary for us to pass. It is therefore ordered that the judgment of the Court of Civil Appeals be reversed and that the judgment of the District Court be affirmed.

*Reversed and judgment of District Court affirmed.*