## D. B. WILLOUGHBY v. W. A. TOWNSEND.

### No. 828. Decided November 9, 1899.

**1. Sale of School Land—Application—Affidavit—Purchase for a Home.**

Application to purchase school land under Act of 1895, chapter 47, section 9 (Revised Statutes, article 4218j), to support suit for recovery of the land, must be accompanied by affidavit that applicant desires to purchase it for a home; this is not complied with in effect by an affidavit that he is a bona fide settler thereon. (Pp. 81, 82.)

**2. School Land—Sale—Forfeiture—Placing Again on Market.**

Land classified, appraised, and sold in 1881, under the law then in force, and then forfeited by suit for nonpayment, having been taken off the market by that sale, was not again open to purchase, though no reclassification and appraisement was required, until the Commissioner, under section 6 of the Act of 1895, had given notice to the county clerk that it was offered for sale. (Pp. 83, 84.)

ERROR to the Court of Civil Appeals for the Third District, in an appeal from McCulloch County.

Townsend sued Willoughby in trespass to try title, and recovered. Defendant appealed, and on affirmance obtained writ of error.

*F. M. Newman,* for plaintiff in error.—The application to purchase should have been accompanied by the affidavit of the applicant, in effect that he desired to purchase the land for a home and had in good faith settled thereon. Acts 24th Leg. (1895), 65 (chap. 47, sec. 9); Rev. Stats., art, 4218j; Cordill v. Moore, 43 S. W. Rep., 299; Snyder v. Nunn, 66 Texas, 255.

*Goodwin, Grinnan & Shropshire,* for defendant in error.—Townsend swears that his home is already fixed upon the land, and that he is a settler thereon in good faith, and that he is not buying it for any other person or corporation. Does this not show that he is buying it for a home? It occurs to us that his affidavit that he has already fixed his home thereon, and is a settler in good faith, and is not buying the land for any other person or corporation, coupled with his application to purchase it as such an actual bona fide settler, shows beyond question that he is buying the land for a home, and if that be so, the effect of

the affidavit taken as a whole is that he is buying the land for a home. The statute in this particular does not undertake to prescribe the language of the affidavit, but the effect of the affidavit as a whole, and we submit that if the whole thing taken together has that effect, it complies with the law. It matters not that you have to look to every part and sentence of the affidavit to find this effect, just so it is there.

This land having been classified and appraised at $1 per acre under the Act of 1881, and sold under said classification and appraisement to Gilbert Smith, and said sale having been canceled at the suit of the State by decree of the District Court of McCulloch County, in November, 1896, and the title to same, by said decree, transferred back to the State, it reverted to the school lands of the State, and was subject to sale at once, and the Land Commissioner had no right to reject appellee's application to purchase same, which application was filed m the General Land Office on January 4, 1897. Said land having already been legally classified and appraised and put on the market at $1 per acre, the Land Commissioner had no right to hold same off the market for further classification and appraisement by himself. Under the Acts of the Twenty-fourth Legislature, which law governs this sale, he had no authority to reclassify and appraise school lands that had been classified and appraised under former laws; and the court should have received this evidence. Acts 24th Leg., p. 63, sec. 3, and p. 64, sec. 4; Acts 25th Leg., p. 184; Rev. Stats., art. 4218e; Suth. on Stat. Cons., secs. 229, 303, 311; Scott v. Blackburn, 47 S. W. Rep., 480.

WILLIAMS, ASSOCIATE JUSTICE.—Under the verdict of the jury and the findings of the Court of Civil Appeals, it must be taken as established that defendant in error, who was plaintiff below, was an actual settler upon the section of school land for the recovery of which he sued, when he applied to purchase it on January 13, 1897; and that plaintiff in error, defendant below, was not such a settler when he applied on January 12, 1897. From this it follows that if defendant in error, in making his application, complied with all of the requirements of the law governing it, he was entitled to the land and therefore had the right to recover it. It also follows that the act of the Commissioner of the General Land Office, in accepting the application of plaintiff in error and in concluding a contract with him, was ineffectual to prevent such a recovery. But as defendant in error was plaintiff, it was necessary for him, in order to maintain his action, to show such compliance with the law as entitled him to an award of the land at the hands of the Commissioner; and the defect in the title of the plaintiff in error could not help him. Gracy v. Hendrix, ante, p. 26.

The statute in force when the transactions took place required that the application to purchase should be accompanied by the affidavit of the applicant "that he desires to purchase the land for a home and has in good faith settled thereon," besides other facts not material here. The

affidavit which accompanied the application made by defendant in error was in the following language: "I, W. A. Townsend, do solemnly swear that my home is upon aforesaid section No. 228, certificate 32-246, issued to G. H. & H. R. R. Co. in McCulloch County, purchased under Act of 1895, and that I am a bona fide settler on the same and head of a family, and am now neither assignee or original purchaser, the owner of any other land purchased from the State. I further swear that I am not acting in collusion with others for the purpose of buying the land for any other person or corporation, and that no other person or corporation is interested in this purchase save myself, and that my postoffice address is Brady, in McCulloch County, State of Texas." It is apparent that this does not contain the language prescribed by the statute. Are the words of the affidavit and those of the statute "in effect" the same? Unless they are, it can not be held that the applicant complied with the law and plaintiff's title must fail; for neither the Commissioner nor the courts have power to dispense with so plain a requirement. It may be true that the home of an intending purchaser is upon the land when he makes his affidavit, and at the same time, be true also that he does not desire to purchase it for a home. His application to buy shows that he desires to purchase, but it does not imply that his desire or intent in purchasing is to make his home upon the land. The difference thus shown between the statement in the affidavit and that required by the statute is rendered material not only by the express language of the law, but by its policy and purpose. These lands are reserved for sale to actual settlers, and not to actual settlers simply, but to such as settle with the purpose of acquiring a home upon the land. To enforce this policy, the law requires actual residence upon the land for three years as a condition precedent to the extension of final title. To prevent evasions of this policy by sales to those who have no purpose of making their homes upon the land, the law requires this affidavit to purge the conscience and show the good faith of the applicant and his intent and purpose to acquire the land, as the law intends he shall acquire it,—for a home.

Nor can it be admitted that the statement that the applicant was a settler in good faith may be properly held to include the other. The law requires the statement of both the settlement in good faith and the desire to purchase for a home. We can not dispense with one as being included within the other when the Legislature has plainly separated them and exacted both. An affiant may state that he has made a settlement in good faith when his purpose is other than that intended by the law. It was doubtless to prevent this that an express declaration from himself under oath of his desire to purchase for a home was required. To dispense with this would permit evasion at a point where the Legislature intended to forestall it, a precaution doubtless suggested by experience. It follows that it was the duty of the Commissioner to reject plaintiff's application, and whether he assigned the proper reason or not is im-

material to this controversy. Since the evidence admitted failed to show a right in plaintiff to recover the land, the judgment in the District Court should have been that he take nothing; and such is the proper judgment for this court to render, unless, by his cross-assignment of error, defendant in error has shown a reason why the cause should be remanded. By such assignment it is urged, in substance, that the District Court excluded evidence which, if admitted, would have established plaintiff's right. The evidence offered and excluded tended to show that on January 4, 1897, prior to the making of the application which we have discussed, which was presented January 13, 1897, defendant in error had presented to the Commissioner an application which complied with all of the requirements of the statute, and that it was rejected by that officer because the land was not then properly on the market and open to bidders. The facts upon which this action was based were that the section had been classified and appraised in 1881 under the law then in force and had been sold in 1882 to one Gilbert. Suit had been brought by the State against him to forfeit his contract for nonpayment of interest, which resulted in a judgment in November, 1895, canceling the sale. A copy of this decree was filed in the General Land Office during December, 1896, and, thereupon, on January 1, 1897, the Commissioner declared the purchase canceled, but did not notify the county clerk of McCulloch County thereof and list the land with him for sale until January 7, 1897, after defendant's application had been filed.

The contention of defendant in error is that upon the annulling of the sale to Gilbert, the land at once reverted to the school fund, and was, by operation of law, made subject to sale at the former valuation, and that the Commissioner had no power to refuse to sell it upon proper application.

It is true, as contended, that the Act of 1895 did not require the classification and appraisement of land previously classified and appraised under former laws. Laws 24th Leg., p. 63, sec. 3; p. 64, sec. 4. But section 6 of that act did require the Commissioner to notify the county clerk of the valuation fixed upon each section of land which "he [the Commissioner] offers for sale." It may be true that it was not necessary, under this act, for him to repeat such notice as to lands not previously sold where it had been given under former laws. It does not appear that this section had ever before been listed with the clerk. However that may be, it had been sold and thereby removed from market so long as the sale to Gilbert stood. How was it to be again offered for sale? The second section of the Act of 1895 invested the Commissioner "with all the power and authority necessary to carry into effect the provisions of this act" and required him to "adopt such regulations as may be deemed necessary to carry into effect the provisions of this act," the regulations to be submitted, it is true, to the Governor for approval before adoption or promulgation. The sixth section required notice, as before stated, to the county clerk of lands offered for

sale. The ninth section provided: "Any owner of land heretofore purchased shall have prior right after this act goes into effect or *after the land is again placed upon the market* to purchase," etc.

The language italicized implies that the land is to be again placed upon the market. The Commissioner is the officer who is to take this action, and he is required by section six to do so by giving the notice to the county clerk of each section which he offers for sale. This probably requires action such as was taken; but whether it does so imperatively or not, the power given in the second section to the Commissioner is sufficient to enable him to prescribe that course, especially as it is in line with the obvious spirit and ·purpose of the law. Such purpose is, doubtless, by placing the list with the county clerk, to give equal opportunity to all persons desiring to settle upon and buy school lands, and this purpose was promoted by the course taken. As defendant in error's first application was made before the land was open to purchase, the Commissioner properly rejected it, and the admission of it in evidence could not have helped the case.

The judgments of the District Court and the Court of Civil Appeals will therefore be reversed, and judgment will be here rendered that. plaintiff below take nothing, etc.

*Reversed and rendered.*