## E. J. BATES ET AL. v. W. R. BRATTON.

### No. 1191. Decided February 26, 1903.

**1.—School Land—Purchase—Forfeiture by Abandonment.**

The failure of a purchaser of school land in 1898, under sec. 11 of the Act of 1895, as amended by Act of May, 1897 (Rev. Stats., art. 4218l), to continue his residence on the section purchased as a home, as required by law, did not open the land to purchase by a subsequent applicant till the forfeiture of the rights of the first was declared by the Land Commissioner. (P. 282.)

**2.—Same—Statutes—Amendment—Repeal.**

The provision of the law of 1895, requiring forfeitures of sales of school land for nonresidence to be declared by the Commissioner, was not repealed as to sales previously made and where the purchasers were still in good standing, by the Act of April 19, 1901,—that law applying only to future sales. (Pp. 282-285.)

**3.—Same—Statutory Construction.**

The words "any purchaser," though comprehensive enough to cover past as well as future sales, will not be construed to apply to past ones where the other provisions of the act indicate that the Legislature contemplated only future sales as coming under its general provisions, as where a special provision of the law is declared to apply to past as well as future transactions. (P. 284.)

4.—Same—Construction Affected by Constitutionality.

.    Similar words in different parts of a statute should receive the same construction, and the scope of certain words in one provision may be limited by the fact, that, as used in a preceding paragraph, the same words must be construed as applying only to future transactions, in order to render the law constitutional.   (P. 284.)

5.—School Land—Settlement by Purchaser—Validating Act.

Purchases of school land for a home, invalid under previous laws because the purchaser was not an actual resident thereon at the time, were validated by the Act of May 27, 1899, where settlement was made within six months from purchase.  (P. 285.)

Error to the Court of Civil Appeals for the Fourth District in an appeal from Mason County.

Bratton sued Bates and Wheeler for the recovery of land, and obtained judgment, which was affirmed on appeal.  Appellants then obtained writ of error.

*Newton & Ward,* for plaintiff in error.  [Application was filed by D. H. Meek.]—The court erred in finding that when school lands have been sold to an actual settler on a proper application and obligation under the Act of 1897 and same is in good standing in the General Land and Treasurer's offices, said land becomes forfeited and the land again on the market, without any action of the Commissioner, if the purchaser or his vendee fails to reside upon the land as the law requires; and especially is this error in this case, the evidence showing that more than three years had elapsed since the application and award of these lands to W. E. Wheeler, and that plaintiff's application was made nearly three and a half years after the land had been awarded and sold to W. E. Wheeler.  O'Keefe v. McPherson, 25 Texas Civ. App., 313; Duncan v. State, 67 S. W. Rep., 905; Savings Bank v. Dowlearn, 94 Texas, 389; Brightman v. Com. Co., 94 Texas, 601; Fristo v. Blum, 92 Texas, 76; Standifer v. Wilson, 93 Texas, 232.

Appellants base their contention upon two propositions: 1.  If the Act of 1901 applies to sales of land made under the Act of 1897, appellants contend that the Act of 1901 only relieves the Commissioner from the duty of again placing forfeited lands upon the market for sale, but does not relieve the Commissioner of the duty of declaring the forfeiture. 2.  That the Act of 1901 has no application to sales of land made under previous laws, but is only prospective in its operation and effect for two · reasons: because the very phraseology of the law shows that its operation was to be prospective, and because if a retroactive effect was to be given to it so as to embrace within the purview of section 3 sales made under the Act of 1897, the law would be unconstitutional.

*Rudolph Runge,* for defendant in error.—It is immaterial under what law the lands in controversy were awarded to plaintiffs in error, so long as they had not made their proof of occupancy of three years, and had not obtained the certificate of the Commissioner of the General Land

Office to that fact; the State had a right to have the purchasers' title annulled for a failure to comply with the terms of the purchase, one of them requiring occupancy, and the State has the power to enforce her rights, such as occupancy by the purchaser, or, in event of failure, to rescind the award, and she may prescribe and change the remedies for that purpose. Acts of 1901, 294, sec. 3; Standifer v. Wilson, 93 Texas, 232; Fristoe v. Blum, 92 Texas, 76; Capps v. Garvey, 41 S. W. Rep., 379; Railway Co. v. Mussette, 86 Texas, 708; Hall v. Allcorn, Dal., 434; Treasurer v. Wygall, 46 Texas, 457; Worsham v. Buckner, 67 Texas, 23; Thompson v. Baker, 90 Texas, 163; De Cordova v. Galveston, 4 Texas, 473.

The Act of 1901 evidently prescribes a new procedure of forfeiture, and of again placing the lands upon the market. It can hardly be supposed that the Legislature intended to let that part of the old law which provides for the forfeiture by the Commissioner stand, and repeal so much thereof as required him to give notice to the county clerks, and thereby again placing it upon the market. To hold so would defeat the very object of the law, which is, as has been often held by this court, to give notice of the forfeiture, and that the lands were again on the market, that all persons desiring to buy the land might be afforded an equal opportunity to do so. The contention of opposing counsel that the archives of the Land Office are as easy of access to the average citizen as are the records of the county clerk's office of his own county, is not in keeping with practical experience.

There never was a statute even indicating by what the Commissioner of the Land Office should be guided in determining whether a purchaser of school land was a settler thereon. He may have taken the simple word of a man whom he considered credible, and he may have rejected the sworn statements of a dozen more credible men on such a question. When, then, the Commissioner's decision was in favor of the original purchaser on the question of continued settlement, although he might in fact reside in New York, the Commissioner's decision would have been final, and the land would have been kept from actual settlement. It evidently was the intent of the Legislature of 1901 to disrobe this one man of that arbitrary power vested in him by former laws, and to clothe the citizen and actual settler seeking a home with the right to enter upon and take possession of school lands that had previously been purchased and abandoned by another, and then to litigate his rights in the courts of our country, letting them pass upon the question of abandonment or nonsettlement vel non, and the forfeiture would then be denounced by the courts, and not by the private citizens, as suggested by plaintiffs in error in their argument.

GAINES, Chief Justice.—The defendant in error, Bratton, brought this suit against plaintiffs in error, Wheeler and Bates, to recover two sections of school land in Mason County, which we will designate simply as section 304 and section 116. There was a trial by a jury, and it

resulted in a verdict and judgment for the plaintiff. This judgment was affirmed by the Court of Civil Appeals.

On the 22d day of September, 1898, Wheeler applied to the Commissioner of the General Land Office to purchase section 304 as a "home section," and section 116 as additional lands. He made the affidavits, filed the obligations and made the first payment of purchase money as required by law, and the lands were awarded to him. On the 17th day of October, 1899, he sold the two sections to Bates. The installments of interest due under the purchase were regularly paid up to the bringing of the suit and to the time of the trial.

On the 20th day of January, 1902, the plaintiff, Bratton, made application to purchase the same lands,—section 304 as a "home section" and section 116 as additional, and in his application complied with all the requirements of the statute. His application to purchase was rejected because the lands had been sold to Wheeler.

From the evidence adduced upon the trial and the charge of the court, the plaintiff's claim appears to have been, that at the time he made his application to purchase the lands were upon the market and subject to sale for two reasons: First, because Wheeler was not an actual settler upon section 304 at the time he applied to purchase; and second, that if Wheeler was an actual settler at such time, both he and his vendee Bates had lost any right acquired by him by ceasing to reside upon the home section, as required by law.

The court charged the jury, in effect, that if they found that the plaintiff was an actual settler upon section 304 at the time he applied to purchase the lands, and either that Wheeler was not an actual settler on that section at the time of his application, or that he did not continue to be such until he sold to Bates, or that Bates after his purchase did not continue an actual settler on such section, to return a verdict for the plaintiff. The defendants requested the following special instruction: "If you find from the evidence in this case that at the time Wheeler made his application to purchase it he was an actual settler thereon and had a right so to purchase it, but you further find that after said purchase said Wheeler, or his vendee E. J. Bates, has failed to reside upon said land as the law requires, then I charge you, as the law in this case, the lands would not be again on the market and subject to sale until the Commissioner of the General Land Office had declared the lands forfeited for nonoccupancy, and so notified the clerk of the County Court of Mason County, Texas." The request was refused and we think its refusal was error.

When Wheeler made his purchase, the law of 1895, regulating the sale of the public free school and asylum lands, as amended by the Act of May, 1897, was in force. Section 11 of the former act, which appears as article 4218l in the Revised Statutes of 1895, after declaring that upon a failure to pay interest the Commissioner should indorse upon the purchaser's obligation "Land forfeited," also provided, among other things, that "if any purchaser shall fail to reside upon and improve in

good faith the land purchased by him, he shall forfeit said land and all payments made thereon to the State, in the same manner as for nonpayment of interest, and such land shall be again for sale as if no such sale and forfeiture had occurred." It is clear as we think, that, under this provision, lands which had become subject to forfeiture by reason of the failure of the purchaser to continue his residence upon the same as required by the act, were not subject to be sold again, until the Commissioner had declared the forfeiture. But it is argued that this provision was repealed by the Act of April 19, 1901, and that, under the requirements of the latter law, whenever the purchaser ceased to make his home upon the land, his rights were ipso facto forfeited and the lands were immediately subject to sale. We need not pause to inquire whether, under our Constitution, it was within the power of the Legislature to make such a provision as to lands which had been sold under the Act of 1895; for we are of the opinion that it was not the intention of the Legislature in enacting the law of April 19, 1901, to affect, in any manner, the rights of those who had purchased under the previous law, and whose account was in good standing in the General Land Office. It did apply to lands which had been previously sold, but which had been forfeited or might thereafter be forfeited in accordance with the provisions of the laws under which they had been bought. That act is entitled, "An act relating to the sale and lease of public free school and asylum lands, and to repeal all laws and parts of laws in conflict therewith." The first section requires the Commissioner to cause lists to be made of the "unsold lands" in the respective counties and to forward the same to the clerks of the counties respectively. The second section provides the manner in which the lands are to be sold. The third section, after prescribing that no person shall purchase more than four sections, provides as follows: "Every purchaser shall be required within three years after his purchase to erect permanent and valuable improvements on the land purchased by him, which improvements shall be of the reasonable market value of three hundred dollars. If any purchaser shall fail to reside upon and improve in good faith the land purchased by him as required by law, he shall forfeit said land and all payments made thereon to the State, to the same extent as for the nonpayment of interest, and such land shall be again upon the market as if no such sale and forfeiture had occurred, and all forfeitures for nonoccupancy shall have the effect of placing the land upon the market without any action whatever on the part of the Commissioner of the General Land Office." Sections 4, 5 and 6, inclusive, apply to leases, and sections 8 and 9 to detached and timbered lands respectively. Section 9 repeals all laws in conflict with the provisions of the act, and section 10 contains the emergency clause. The claim is, that under the latter provision of section 3, if either Wheeler or Bates failed to reside upon the land as required by law, the land became forfeited without the action of the Commissioner and was again upon the market for sale. This presents the question: Did that provision apply to past sales?

The rule in the construction of statutes is that they are to be construed as acting prospectively, unless it appears, either by express language or by clear implication, that they were intended to have a retrospective operation. With a single exception to be hereinafter noted, we find nothing in the entire act which indicates that it was to apply to any past transactions. The word "shall" appears throughout the act and in almost every section. We presume the argument in support of the contention is that the words "if any purchaser shall fail" and "all forfeitures for nonoccupancy" are broad enough to embrace those who had theretofore purchased as well as future purchasers. That is true, and the language should probably receive that construction provided there was anything in the entire act to indicate that the Legislature in using it had in mind past sales. Looking to the entire act we find nothing to indicate that at any time they contemplated changing the law as to those who had purchased lands under the previous laws. On the contrary, we find in section 4 a provision which clearly indicates that the general purpose was to legislate only as to future transactions. That provision is found in the following extract from that section: "All lands which may be leased shall be subject to sale at any time, except where otherwise provided herein. This provision in regard to the sale of leased lands shall apply to leases heretofore made as well as to those hereafter to be made." This evinces to our minds that the Legislature in passing the act contemplated only future sales and leases. If not, after providing that leased lands shall be subject to sale, why say, that the provision shall apply to past as well as to future leases? If they understood the act as applying to future sales and leases, why make the special provision so as to include past leases?

But again, the words "any purchaser" as found in the latter provision quoted from section 3 are no more comprehensive than the words "every purchaser" in the provision which immediately precedes it. So if we should hold that by "any purchaser" the Legislature meant past as well as future purchasers, we should be bound to hold the words "every purchaser" are equally comprehensive. The result would be that we would have to hold that the Legislature intended to impose upon those who had purchased under former laws, the burden of making improvements of the value of $300, an exaction not demanded by the laws under which they bought. This the Legislature could not do, because it is prohibited by the Constitution. It is never presumed that the Legislature intended to exceed its powers as limited by the Constitution, and where it employs language which reasonably admits of two constructions, one of which is constitutional and the other of which is not, the former construction must prevail. Again, it is a rule in the construction of writings that ordinarily the same word is presumed to be used in the same sense throughout the instrument; so that when we reach the conclusion that the word "purchaser" in the first provision under consideration means purchaser under that act, and does not include purchasers under former laws, we should also conclude that the word is used in the same

sense in the next succeeding provision. So also the words "all for-feitures for nonoccupancy" evidently refer to the nonoccupancy of pur-chasers under that act.

For the error of the court in refusing the requested instructions the judgment must be reversed; and since the cause is to be remanded, we deem it proper to consider briefly a matter which was assigned as error in the Court of Civil Appeals, although it has not been assigned in the application for the writ of error to this court. The trial judge, in con-nection with the other charges, instructed the jury, in effect, if Wheeler was not an actual settler upon section 304 at the time he made his application to purchase, to find for the plaintiff. The Act of May 27, 1899, validated all sales made prior to the 1st day of January of that year, when the applicant had not settled upon the land at the time of his application but had made settlement upon the same within six months after that time, and when the law had in all other respects been complied with. Wheeler having made his application on Septem-ber 22, 1898, it seems to us the jury should have been instructed in effect that if he actually settled upon section 304, within six months after that date, the defendant was entitled to a verdict unless there had been a subsequent abandonment, either by him or by Bates, and a for-feiture by the Commissioner of the General Land Office.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*