J. W. ESTES v. J. J. TERRELL, COMMISSIONER, ET AL.

No. 1532.    Decided April 11, 1906.

**1.—School Land—Land Commissioner—Placing on Market.**

Under the Act of April 15, 1905, school land not previously leased or sold was open to applications to purchase as soon as the county clerk received no- tice from the Land Commissioner of its classification and appraisement, as provided by previous law; the Commissioner had no authority to fix a later date by his notice.    (Pp. 623, 624.)

**2.—Same—Fixing Date for Sale.**

The provisions of the Act of 1895, authorizing the Land Commissioner to fix a date in the future when school lands should be open to purchase, apply only to lands previously leased or sold and coming on the market by expiration or cancellation of the previous contract.    (Pp. 623, 624.)

**3.—Statute—Casus Omissus.**

Where a casus omissus occurs in a statute through inadvertence of the Legislature, the particular case thus left unprovided for must be disposed of according to the law as it existed prior to such statute; the omission can not be supplied by the courts.    (Pp. 624, 625.)

Original application to the Supreme Court for writ of mandamus against Terrell as Commissioner of the General Land Office.

*E. Cartledge,* for relator.

*R. V. Davidson,* Attorney-General, and *W. E. Hawkins,* Assistant, for respondent.

GAINES, CHIEF JUSTICE.—This is a suit for a writ of mandamus to compel the Commissioner of the General Land Office to award to the relator as a purchaser a tract of school land in Menard County for which he had made application. J. H. Low, who had also made appli- cation to purchase the land, was made a party defendant. The facts al- leged in the petition are not denied in any material particular. They are as follows: The tract in controversy is a part of the lands surveyed and set apart to the school fund and has never been leased. Prior to re- lator's application to purchase the tract, the respondent Terrell, as Com- missioner of the General Land Office, caused said land to be classified and appraised, and notified the county clerk of Menard County of the classification and appraisement. The notice was received by the clerk and was recorded as required by law, in the month of November, 1905. On the 1st day of December thereafter, the relator mailed to the Com- missioner his application to purchase the tract at the appraised value. This was the first application after notice of the valuation and appraise- ment was received by the clerk. He was a qualified purchaser and his application was in strict conformity to all requirements of the statute. It was received by the Commissioner on December 4, and was not ac- cepted for the reason that the Commissioner had assumed to delay ex- posing the land for sale until the 1st day of January, 1906, and had advertised it as being upon the market on that day.

The sole question presented is thus stated in the brief for the respond-

ent Terrell: "Where the Commissioner of the General Land Office advertises that certain lands which have not been on the market will come on the market at a designated future date, and so states in the notice of classification, valuation, etc., which he transmits to the county clerk of the county in which such lands lie, under the provisions of the Act of April 15, 1905, do such lands come on the market immediately upon the receipt by the clerk of such notice, or do they come upon the market upon the date so designated by the Commissioner therefor?"

We are of the opinion, that when notice of the classification and appraisement was sent to the county clerk and was received by him, the tract was subject to sale, and that the Commissioner of the General Land Office was without authority to postpone the sale to some future date. The respondents rely upon the Act of April 15, 1905, to show that he had that power. That act repeals the previous laws upon the same subject only in so far as they are in conflict with it. Under the former statutes (Rev. Stats., arts. 4218f and 4218g) the land was upon the market when the clerk of the County Court received notice of the classification and appraisement. (Ford v. Brown, 7 Texas Ct. Rep., 808; Willoughby v. Townsend, 93 Texas, 80.)

We find no express provision in the Act of 1905 which empowers the Commissioner to fix the time at which lands which have never been leased shall come upon the market on a day other than that on which the classification and appraisement shall come to the hands of the county clerk, nor do we think that it contains any provision from which such power can be implied.

Section 2 of the Act is as follows: "In cases where lands are now leased or may be hereafter leased and the same shall come on the market by reason of the expiration of such lease, it shall be the duty of the Commissioner to notify the county clerk ninety days, when practicable, before the expiration of such lease, of the date of such expiration. When the lease is for any cause cancelled, he shall notify the county clerk of that fact and fix a date not less than ninety days thereafter on and after which applications to purchase may be filed. All notices of expiration and cancellation of leases shall be forthwith recorded as required for notices of classification and valuation. The Commissioner shall adopt such means as may be at his command that will give the widest publicity as to when land will be on the market for sale by reason of expiration of any lease. Such publicity shall, when practicable, be given ninety days in advance of such expiration. When a lease is cancelled for any cause, the land shall not be for sale until ninety days thereafter. Immediately after the cancellation of a lease or leases the Commissioner shall proceed to give publicity to the fact, the same as is herein required with reference to publicity of expiring leases. If there are no other satisfactory or sufficient means at the command of the Commissioner that will give the necessary publicity, he shall have printed at the expense of the state, to be paid out of the appropriation for public printing, a list or lists of the lands and send them out in the mail to every person requesting them. Such lists shall also contain a brief statement as to how one shall proceed to purchase the land." Some of the provisions of this section are worthy of notice. (1) When a lease is

about to expire, the Commissioner is to notify the county clerk of the day on which it shall cease to exist—from which it seems to us, it was contemplated, that the land should be upon the market at the expiration of the lease. (2) When a lease is cancelled, the clerk is also to be notified and the Commissioner is required "to fix a date" not less than ninety days from the day of the cancellation, on which applications to purchase may be filed.

By section 4 of the Act, it is provided that when two or more applicants shall offer the same price for the land and such bids are the highest offered, that they shall be apprised of the fact, and that the Commissioner shall fix a date for new bids not less than thirty days thereafter. Section 5 provides that purchases by lessees shall be forfeited when the purchaser fails to file his affidavit and proof of settlement as required by the Act, and that in such case it shall be the duty of the Commissioner to place the land upon the market not less than thirty days after the forfeiture. That section also provides, that, should a purchaser of land under a lease attempt to sell the land before settlement; or should such purchaser fail to comply with the provisions of the Act with respect to settlement and residence, the Commissioner shall cancel the sale and proceed to offer the land for sale, as is provided in case of cancelled leases.

If there be any other provision in the Act, which authorizes the Commissioner of the General Land Office to fix a date on which the land is to be subject to sale, it has escaped our notice. It is argued, that since it was a main purpose of the Act of 1905 to secure competitive biddings for the school lands and thereby to benefit the school fund, and since in a case like the present one this could only be accomplished by fixing a future day for sale and giving publicity to the fact for the benefit of such as might desire to purchase, it is to be inferred that it was intended that the Commissioner should pursue the same course, as in case of other lands which are expressly mentioned. The policy of selling the school lands to the highest bidder is a wise one and it is probable that it did not occur to the Legislature at the time that the Act was passed that a case like the present would arise. It is to be remembered, that at that time nearly all of the surveyed school lands of the State which were not under lease, had been surveyed, classified and appraised and were upon the market for sale. The Act itself suspended the sale of these lands until the 1st day of September next after its passage, when they all came upon the market at the same time and were subject to competitive offers. So in case of leased lands, where the lease was kept in good standing, they were left subject to sale on the day after the lease expired—which itself fixed a day for competitive applications to purchase. For lands leased, but which might come upon the market by a cancellation of the leases, rules to secure competition were provided; and it is probable that if it had occurred to the makers of the law, that there were other lands which would come upon the market at a time not fixed, they would have been included in the list of those in which the Commissioner is empowered to fix the day on which they should be subject to sale, but this the Legislature has not done.

It is "casus omissus" and to it the maxim applies, "A case omitted

is to be held as intentionally omitted." (6 Cyc., 702.) In reference to this, Broom, in his "Legal Maxims," says: "Where, however, a casus omissus does really occur in a statute, . . . through the inadvertence of the Legislature, . . . the rule is that the particular case thus left unprovided for must be disposed of according to the law as it existed prior to such statute. . . . 'A casus omissus,' observes Buller, J., 'can in no case be supplied by a court of law, for that would be to make laws.'" (Jones v. Smart, 1 Texas, 52.)

For the reasons given, the writ of mandamus will be awarded as prayed for in the petition.