LEFEVRE v. JACKSON.†

(Court of Civil Appeals of Texas. Jan. 18, 1911. On Motion for Rehearing, Feb. 15, 1911.)

1. APPEAL AND ERROR (§ 609*)—RECORD—SUPPLEMENTAL TRANSCRIPT—FILING.

Where the appellee prepares or obtains a separate or supplemental transcript, it should be filed together with the appellant's transcript, so as to combine the matter as one case.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2685-2687; Dec. Dig. § 609.*]

2. COSTS (§ 257*)—ON APPEAL—RECORD—SUPPLEMENTAL TRANSCRIPT.

Where the appellee files a supplemental or additional transcript which is practically identical with that filed by appellant, the cost of filing it should be assessed to him.

[Ed. Note.—For other cases, see Costs, Cent. Dig. § 972; Dec. Dig. § 257.*]

3. APPEAL AND ERROR (§ 564*)—RECORD—STATEMENT OF FACTS—REPORT OF FACTS BY TRIAL JUDGE.

Under Acts 31st Leg. c. 39, a trial judge preparing a statement after disagreement of counsel may use such time as he deems necessary, provided it does not delay the filing of the transcript beyond the statutory time.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 564.*]

4. PUBLIC LANDS (§ 173*)—DISPOSITION BY STATES—TEXAS—SCHOOL LANDS—LAND OFFICES—PROCEEDINGS.

Where the action of the Land Commissioner in canceling a sale of school lands is proper, it is immaterial whether he assigns the proper reason for his action.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 173.*]

5. TRESPASS TO TRY TITLE (§ 8*)—RIGHT OF ACTION—TITLE TO SUPPORT ACTION—TITLE TO SCHOOL LANDS—COMPLIANCE WITH LAW.

Plaintiff in trespass to try title, claiming title as a purchaser of school lands, cannot rely on any defects in defendant's title, but must show that he fully complied with the law so as to entitle him to an award of the land.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 11; Dec. Dig. § 8.*]

6. TRESPASS TO TRY TITLE (§ 41*)—RIGHT OF ACTION—TITLE TO SUPPORT ACTION—INTEREST IN PUBLIC LANDS—EVIDENCE.

Evidence held to sustain a finding that plaintiff in trespass to try title claiming as a purchaser of school lands did not acquire or settle upon the land in good faith for the purpose of making it his home.

[Ed. Note.—For other cases, see Trespass to Try Title, Dec. Dig. § 41.*]

7. PUBLIC LANDS (§ 173*)—DISPOSITION BY STATES—TEXAS—SCHOOL LANDS—FORFEITURE BY COMMISSIONER.

The act of 1901 (Acts 27th Leg. c. 125), which is similar to article 4218l, Rev. St. 1895, provides that any purchaser of public school lands who shall not in good faith reside upon and improve the land purchased by him as required by law shall forfeit it, and it may again be put on the market, and sold without any act whatever by the Commissioner of the General Land Office, and, where the commissioner thereunder declares a forfeiture of land in actual occupancy, because the purchaser did not reside thereon as required by law, this necessarily involves an inquiry into and a finding adverse to the purchaser's good faith.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 173.*]

8. STIPULATIONS (§ 14*)—CONCLUSIVENESS—EFFECT — MATTERS CONCLUDED — STIPULATIONS AS TO ISSUES AND EVIDENCE.

An agreement by parties in trespass to try title where both claim under a disposition of public lands by the State Land Commissioner that, "if plaintiff * * * had complied with the law in relation to settlement and residence upon the lands involved as required by law, judgment should be rendered in his favor," and that plaintiff had complied with the law except as to settlement and residence thereon, does not preclude an inquiry into the question of plaintiff's good faith, since without good faith there was no settlement or residence on the land "as required by law."

[Ed. Note.—For other cases, see Stipulations, Cent. Dig. § 27; Dec. Dig. § 14.*]

9. PUBLIC LANDS (§ 173*)—TEXAS—SCHOOL LANDS—STATUTES REPEALED.

The act of 1901 (Acts 27th Leg. c. 125), empowering the Land Commissioner to cancel sales of school lands where the purchaser does not reside thereon or in good faith make improvements, and Rev. St. 1895, art. 4218l, which is similar in terms and effect, are not repealed by Acts 1907 (Acts 30th Leg. Ex. Sess. c. 20) §§ 6e, 6a, the latter of which declares that the sales provided for therein shall be "on condition of settlement as provided by this act and existing statutes," nor were they repealed by the act of 1905 (Acts 29th Leg. c. 103), which expressly requires settlement on the land within 90 days from acceptance of application, and repeals only inconsistent prior laws.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 173.*]

10. PUBLIC LANDS (§ 173*)—DISPOSITION BY STATE—TEXAS—SCHOOL LANDS—CERTIFICATE OF OCCUPANCY—CONCLUSIVENESS.

Under the act of 1901 (Acts 27th Leg. c. 125), relating to school lands, which prescribes that, "if any purchaser shall fail to reside upon and improve in good faith the land purchased by him as required by law, he shall forfeit said land and all payments made thereon to the state to the same extent as for nonpayment of interest, and such land shall be again placed upon the market without any action whatever on the part of the Commissioner of the General Land Office," a citizen, as well as the state by a direct proceeding, may attack the bona fides of a settlement on public lands even after a certificate of three years' occupancy has been granted by the Land Commissioner, since the certificate is not conclusive as to the purchaser's bona fides in settling upon the land.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544-551; Dec. Dig. § 173.*]

11. PUBLIC LANDS (§ 173*)—DISPOSITION BY STATES—TEXAS—FORFEIT.

Under Laws 1901 (Acts 27th Leg. c. 125), a cancellation by the Land Commissioner of the sale of school lands on the ground that the purchaser did not settle thereon in good faith, and a resale to another party, fixes the status of the first party's claim, without any further action by the commissioner.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544-551; Dec. Dig. § 173.*]

On Motion for Rehearing.

12. STIPULATIONS (§ 14*)—CONSTRUCTION AND OPERATION—STIPULATION AS TO JUDGMENT.

A stipulation between parties to trespass to try title, who both claimed title derived through the office of the Commissioner of Public Lands, that, if plaintiff was not a settler on the lands in good faith, judgment therefor should be for the defendant, is, in effect, an acknowledgment that

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court March 8, 1911.

the defendant had complied with all the forms of law.

[Ed. Note.—For other cases, see Stipulations, Dec. Dig. § 14.*]

Appeal from District Court, Pecos County; W. C. Douglas, Judge.

Trespass to try title by O. B. Jackson against Guy Lefevre, with cross-action by the defendant. Judgment for the plaintiff, and the defendant appeals. Judgment for plaintiff reversed, and judgment rendered for defendant in his cross-action.

A. S. Hawkins, for appellant. McKenzie & Brady, J. W. Parker, and E. Cartledge, for appellee.

FLY, J. Appellee instituted an action of trespass to try title against appellant to recover six sections of school land, originally sold by the state of Texas to appellee, but afterwards the sale was canceled by the Commissioner of the General Land Office for "failure to reside upon said lands as required by law," and was then sold to appellant. The cause was tried by the court, without a jury, and judgment rendered in favor of appellee.

Before the trial an agreement was made by the parties, the important parts of which are as follows: "It is further agreed that if the plaintiff, O. B. Jackson, has complied with the law governing settlement and residence upon said school lands as required by law, that he shall be entitled to a judgment for the land in controversy, and, if not, judgment shall be entered for the defendant for said lands. It is further agreed that on May 18, 1909, the Commissioner of the General Land Office canceled the sale of said lands to O. B. Jackson on account of his failure to reside upon said lands as required by law, and that said cancellation was in all things regular and formal on its face, and that thereafter said lands were sold to defendant, and that said sale was regular in all respects, provided the facts authorized the cancellation of the sale to O. B. Jackson. This agreement shall not affect the burden of proof in this case. It is expressly agreed that O. B. Jackson has in all things complied with the law governing the sale of school land, unless it be as to the matters of settlement and residence thereon, which matters last stated shall be determined by this court under the evidence offered, and the same agreement applied to defendant, Lefevre, and this agreement does not waive the rights of either party to appeal." In addition the court found: "Plaintiff, O. B. Jackson, actually in person settled upon the land in question on March 12, 1908, being within 90 days after the same was awarded to him, to wit, December 23, 1907, the date of sale being December 10, 1907, and that plaintiff's affidavit of settlement was duly made and filed in the General Land Office of the state

of Texas on the 6th day of April, 1908. Plaintiff actually resided upon said land in person from the time of his said settlement to the present time except that he frequently left said land temporarily on business errands, but with the intention of returning each time, at one time going to the Pan Handle country with a bunch of poor cattle, and being away from his said land for about six weeks. He never abandoned his said settlement. Plaintiff did not acquire or settle upon said land in good faith or for the purpose of making the same his home. The rental value of said land since the cancellation of the sale to plaintiff was four cents per acre per annum, and that plaintiff has had the exclusive use and possession thereof during said time. No evidence, other than the agreement above referred to, was offered as to the settlement or occupancy of defendant on the land in question."

The transcript in this case was filed on May 2, 1910, and numbered 4,550, and on June 6, 1910, appellee filed a transcript of the record and the original transcript of the evidence in this court and numbered them 4,570, and both causes were submitted at the same time. In case 4,570 a motion was filed on December 29, 1910, to consolidate it with case 4,550; the object of appellee being to obtain the benefit of the statement of facts filed in the former case. An inspection of the two records shows them to be practically identical. The transcript obtained by appellee should have been filed with appellant's transcript so that the whole matter might be located as one case. Cassin v. Zavalla County, 71 Tex. 203, 9 S. W. 105. This was not done by appellee, and all costs arising from filing the additional transcript should be assessed against appellee. However, the appellee has made a motion to consolidate cause 4,570 with this cause, and, while technically this is not the proper proceeding, it is in effect an application to file the transcript in this cause, and will serve the same purpose that an application for a certiorari would. There is no prescribed time in which an application for certiorari to perfect a record shall be made, and it has been held by the Supreme Court that the ends of justice are best promoted by permitting the record to be perfected even after the judgment has been rendered in an appellate court under proper circumstances. Telegraph Company v. O'Keefe, 87 Tex. 423, 28 S. W. 945; Railway v. Peery, 87 Tex. 597, 30 S. W. 435; Railway v. Cannon, 88 Tex. 312, 31 S. W. 498; Bonart v. Lee, 46 S. W. 906. It is not denied that the statement of facts filed in cause 4,570 is the original statement of facts, and the motion to consolidate that case with this will attain every object that would be attained by a writ of certiorari. We have, therefore, concluded to allow the statement of facts to be filed in this case,

and it will be considered by the court. The certificate of the judge that he prepared the statement of facts after disagreement by counsel must be taken as true. Authority is given him to use such time as he may deem necessary, provided he does not delay the filing of the transcript beyond the statutory time. Gen. Laws 1909, p. 374. The sale to appellee was canceled by the Land Commissioner, and, if that action was properly taken, it does not matter whether he assigned the proper reason for the cancellation or not. Willoughby v. Townsend, 93 Tex. 80, 53 S. W. 581. It is also held in that case, which is merely a declaration of the general rule in cases of trespass to try title, that it devolves upon the plaintiff in such cases to show such a compliance with the law as to entitle him to an award of the land, and that no defect in the title of the defendant could help him. It follows that the burden rested upon appellee to prove that he had fully complied with the law relating to the sale of school lands, and no defect or weakness in the title of appellant can assist appellee in making out a case. It devolved upon him, therefore, to prove that he was an actual settler upon the land at the time that his application to purchase was accepted, or that he entered into actual occupancy of it within 90 days after such acceptance, and that within 30 days after the expiration of the 90 days he had filed in the land office an affidavit that he had in good faith actually in person settled upon the land purchased by him, and prove that he had so settled on and occupied the land, and had executed the necessary obligations and made the required payments. Gracey v. Hendrix, 93 Tex. 26, 51 S. W. 846.

The facts disclose that appellee and his brother, as partners, owned a ranch in Pecos county, that the ranch contained 35 or 38 sections, equivalent to 22,600 or 24,520 acres, which were stocked with cattle and horses. Appellee owns one-half of that ranch and cattle and horses. In addition, he and his brother own another ranch in the Pan Handle of Texas. Appellee and brother own about 3,000 cattle, and 40 or 50 head of horses. Although possessing as much property as he did, the house built by him on the land in controversy cost only $38, and he had no stove in it, and the rats built nests under the cot in the house. Appellee stated that he did his own cooking, and that it was done out of doors on the ground. There were a well and windmill on the land, all the improvements not being worth more than $400, and were paid for with partnership money, and the partnership paid the money to the state. The house was about 8 by 10 feet in dimensions, and consisted of one room. The circumstances justified the finding that appellee "did not acquire or settle upon said land in good faith, or for the purpose of making it his home."

It being determined that appellee did not settle on the land in good faith for the purpose of making it his home, the important issue presented in this case is, Did the Commissioner of the General Land Office have the power and authority to declare a forfeiture of the sale of the land to appellee on that ground or any other? For, if there was a ground for which the sale could be canceled, the cancellation would hold good no matter if the ground upon which the Land Commissioner based his declaration could not be sustained. By the act of 1901 (Gen. Laws, p. 294, c. 125), which is the law that will govern in this case, it is provided that "if any purchaser shall fail to reside upon and improve in good faith the land purchased by him, as required by law, he shall forfeit said land and all payments made thereon to the state, to the same extent as for nonpayment of interest, and such land shall be again placed upon the market without any action whatever on the part of the Commissioner of the General Land Office," and that provision, which is practically the same as in article 4218*l*, Rev. St. 1895, conferred upon the Land Commissioner the power to declare that sale of the land had been forfeited in case there was a failure to reside upon and improve in good faith the land. In declaring a forfeiture of the purchase in this case, as well as others, when there was actual occupancy of the land, the Land Commissioner was necessarily compelled to inquire into and pass upon the question of good faith, and, when he had declared that the sale of the land to appellee had been forfeited on account of his failure to reside thereon as required by law, it necessarily carried with it the decision that he had not resided upon and improved in good faith the land purchased by him, because residence on the land, as required by law, involves improvement in good faith. It must be presumed that the Land Commissioner, before taking action on the forfeiture, acquainted himself with the facts, and knew that appellee was actually occupying the land, and in declaring that he did not reside on the land as required by law had found that the residence was not in good faith, just as it was determined by the trial judge. The agreement made by the parties that "if plaintiff, O. B. Jackson, had complied with the law in relation to settlement and residence upon the land involved as required by law, judgment should be rendered in his favor," and that appellee had complied with the law except as to settlement, did not preclude an inquiry into the question of good faith for the reasons hereinbefore stated. A settlement could not be made on public land "as required by law" without good faith entered into and was a part of the settlement. Without good faith, there was no settlement or residence on the land in the eyes of the law.

It was held by the trial court that the Land Commissioner is not authorized under the acts of 1907 "to cancel school land pur-

chases for lack of good faith," but, on the other hand, it is declared on page 492, Gen. Laws 1907 (Ex. Sess.) c. 20, § 6a, that the sales provided for therein shall be "on condition of settlement, as provided by this act and existing statutes," and in the same act (section 6e, pp. 494, 495) it is provided: "One who has heretofore or who may hereafter purchase land out of a lease or otherwise, on condition of settlement in the counties named in section 6a of this act, and fails to settle thereon within the required time, or fails to file in Land Office his affidavit of settlement within the required time, or fails to comply with the law as to residence on the land, or executes a transfer contrary to the provisions of this act, except those stated in this act as not being void, he shall forfeit the land and all payments made thereon to the fund to which the land belongs and when the commissioner shall be sufficiently informed of the facts which operate as a forfeiture, he shall cancel the award or sale by noting the act of forfeiture on the obligation and mail notice of that fact to the proper county clerk." This action is to be taken upon a noncompliance with the law as to residence which is that embodied in that act and other statutes which require residence and improvements in good faith. None of the provisions as to forfeiture set out in article 4218l and in the act of 1901, as to forfeitures, have been repealed by any subsequent legislation, but they are recognized by the acts of 1905 and 1907 as being in full force and effect. Clark v. Terrell, 100 Tex. 277, 98 S. W. 642.

It is insisted by appellee, and it was held by the trial judge, that the questions of the purpose for which appellee settled on the land and his bona fides cannot be raised excepting by a direct proceeding by the state, and the case of Logan v. Curry, 95 Tex. 664, 69 S. W. 129, is cited in support of the proposition. The purport and intent of that decision has been stated by the writer of the opinion in the case of Mitchell v. Robison (Tex. Sup.) 132 S. W. 465. The court, referring to Logan v. Curry, says: "It is held in that case that after the lapse of three years when the purchaser has made his affidavit of occupancy and improvement, and the commissioner has issued him a certificate showing that he has occupied and improved the land so required by the statute, that the latter has no power to cancel the sale for failure to occupy the land. So also as to the question of collusion. It is also distinctly held in that case that when the applicant makes the affidavit required of a purchaser, and the commissioner accepts it and awards the sale, that action settles the question of collusion, and the commissioner is without power to cancel the sale upon that ground." That is a full statement of everything decided in Logan v. Curry, and there is nothing in it which would deny to the Land Commissioner the power to cancel a sale of land for bad faith

in its settlement, and, indeed, no court would so hold in the face of a statute which prescribes that "if any purchaser shall fail to reside upon and improve in good faith the land purchased by him, as required by law, he shall forfeit said land and all payments made thereon to the state." In such case a cancellation by the Land Commissioner would be nothing but a declaration of what the law had in terms declared. That the construction placed by appellee upon the decision in Logan v. Curry is not the proper one is apparent from the decision in the case of Barnes v. Williams, 102 Tex. 444, 119 S. W. 89. In that case Williams sued Barnes for certain land that had been awarded the former by the state, and, after three years, he had obtained a certificate of occupancy. Barnes had applied for the purchase of the land before the three years had expired, but his application had been rejected. Appellee Barnes sought to show that the sale to Williams was void for the reason that he at the time was not a settler in good faith on the land, and Williams contended that Barnes could not claim the land because he was not a settler in good faith. Those questions of fact were submitted to the jury and the verdict was for Barnes; that is, against Williams, to whom had been awarded a certificate of occupancy. The Court of Civil Appeals of the Sixth District reversed the judgment of the trial court, and rendered judgment in favor of Williams. The Supreme Court reversed that judgment. The court said: "One of the reasons given by the Court of Civil Appeals for its action was that the proof and certificate of occupancy by plaintiff precluded all inquiry as to the fact of his settlement upon the land. We are of the opinion that this was error. The decision of this court in the case of Logan v. Curry, 95 Tex. 664, 69 S. W. 129, does not go so far. In that case, when the certificate of occupancy was issued, no right had been acquired by any third person to be affected by the action of the commissioner in issuing it. The only effect that was given to his certificate was that it determined the status of the sale so conclusively as to preclude subsequent purchasers so long as the state allowed it to stand. That the commissioner has the power to do that is one proposition, but that he has the power to adjudicate the rights of other claimants already accrued is quite a different one." Let it be remembered that in the case of Barnes v. Williams the title of the latter was attacked on the ground that he was not a settler in good faith on the land, and that issue was submitted to a jury, and by the jury determined against the good faith of Williams, and the procedure of the trial court in presenting the issue to the jury was approved by the Supreme Court. That decision would seem to absolutely uphold the right of the citizen to attack the bona fides of a settlement on public land even after a certificate of three

years' occupancy has been granted by the Land Commissioner.

The finding that the appellee had not settled on the land in good faith fixed the status of appellee's claim under the law which declares that such claim was forfeited independent of any act or declaration upon the part of the Land Commissioner. Bates v. Bratton, 96 Tex. 279, 72 S. W. 157; Slaughter v. Cooper, 121 S. W. 173.

The judgment is reversed, and judgment here rendered that appellee take nothing by his suit, and that appellant recover the land in controversy on his cross-action.

### On Motion for Rehearing.

We are confronted with two distinct motions for rehearing filed for appellee at different times, each treating the matters in issue in its own way, and we have been at a loss to determine which one should be recognized and treated as the motion for rehearing. However, we have considered both of them and have arrived at the conclusion that nothing has been presented that necessitates a change in our former opinion. We reiterate that it is the requirement of the law of 1901 that a purchaser of public lands shall live on the same in good faith, and that if he "shall fail to reside upon and improve in good faith the land purchased by him, as required by law, he shall forfeit said land and all payments thereon to the state to the same extent as for nonpayment of interest, and such land shall be again placed upon the market without any action whatever on the part of the Commissioner of the General Land Office." That provision has not been repealed and is in effect, and it and all existing laws in regard to settlement were expressly recognized in the law of 1907. It is provided in the act of 1907 that not only should the purchaser thereunder comply with the conditions of settlement as provided therein, but should comply with those provided in existing statutes. The law of 1901 had not been repealed, and was then existing, and is still existing.

This case is clearly within the rulings in Barnes v. Williams, 102 Tex. 444, 119 S. W. 89, in which a certificate of occupancy, which is clothed with so much sacredness by the argument of appellee that any fraud may have been perpetrated under it and cannot be questioned, was held not to preclude an inquiry as to good faith or any other matter of settlement, when the right of a third person arose before the issuance of the certificate. The court said: "There is nothing in the statute which provides for a hearing of rival claimants when proof of occupancy is offered. The proceeding is purely ex parte, and there is nothing in it to suggest that existing rights of any but the person offering it are to be considered. It would seem to be contrary to fundamental principles to

give such action a conclusive effect against other claimants of the land for a hearing of whom no provision is made. And this of itself indicates sufficiently that the Legislature intended no such effect." In the case referred to the Court of Civil Appeals of the Sixth District held just what appellee claims to be the law, and practically overruled the decisions in Lamkin v. Matsler, 32 Tex. Civ. App. 218, 73 S. W. 970, and Bumpass v. McLendon, 45 Tex. Civ. App. 519, 101 S. W. 491. The Supreme Court, however, agreed with the latter decisions. The Logan-Curry Case has no applicability whatever to the facts of this case.

Appellant was not a trespasser upon the land, but went there under the sanction of the laws of Texas. It was agreed that, if appellee was not a settler in good faith on the land, judgment should be rendered in favor of appellant for the land, which was an acknowledgment that he had complied with all the forms of law. It was also agreed that the land was sold by the Land Commissioner to appellant, and that the sale was regular in all respects. No proof was necessary under that agreement.

The motion is overruled.