HENRY FORD v. W. T. BROWN.

No. 1212. Decided May 28, 1903.

1.—School Land—Placing on Market.

Public school land was not placed on the market under article 4218f, Rev. Stats., until notice of the valuation placed on it was filed with the county clerk as provided by article 4218g. (Pp. 542-544.)

2.—Same—Premature Application.

An application for purchase of school land filed in the General Land Office forty minutes before the filing of the classification and appraisement with the county clerk had placed the land on the market, was premature and conferred no right as against one filing an application after such filing of the classification and appraisement. (P. 544.)

Questions certified from the Court of Civil Appeals for the Third District, in an appeal from Concho County.

*J. W. Hill,* for appellant. [*John J. Guion, W. A. Wright,* and *G. H. Garland* were of counsel.]—In the several steps required to be taken by the Commissioner he is first to "classify" or "reclassify" the land which is to be sold under that act. Article 4218e clearly defines what the Legislature meant by "classify" when it requires the Commissioner to designate the same as "agricultural, grazing or timbered, according to the facts in the particular case." When the land, then, had been so classified, that is, designated by the Commissioner as being agricultural, grazing, or timbered land, article 4218f provided that it should "be subject to sale." Section 6, article 4218g, made it the duty of the Commissioner to "notify in writing" the county clerk of the valuation fixed upon each section of land which he "offers for sale," which notification is required to be kept by the clerk in his office and recorded in a well bound book, "which shall be open to public inspection."

The contention of appellant is that until this notification is given the clerk "in writing" the land is not upon the market, is not "offered for sale," and that any person applying to purchase, and filing his application in the Land Office prior to such notice to the clerk acquires no right.

The contention of the appellee is that such notice to the clerk is immaterial and that when the land is classified by the Commissioner it is then "subject to sale;" and that any one filing his application in the Land Office before such notice to the clerk acquires the title to the land. He relies on Cordill v. Moore, 43 S. W. Rep., 300, which holds that the notice required by section 6 is not necessary "to the putting of the land upon the market." The facts are not given in the case and we are not able to determine whether the conclusion reached was correct, as it may have been that the application was made before the list was received but not filed in the Land Office until afterwards, as in the case of Lester v. Elliott, 63 S. W. Rep., 916. But the broad statement that the notice was not necessary to put the land upon the market is, we think, in conflict with Willoughby v. Townsend, 93 Texas, 80.

So far as the record shows the land in controversy had never before been classified or placed upon the market, and it became the duty of the Commissioner before the land could be sold to not only classify it but also to notify the clerk of the valuation placed by him upon it. This court has said that the purpose of this requirement was "to give equal opportunity to all persons desiring to settle upon and buy school land." 93 Texas, 84. If this was not the purpose of section 6, then why was it inserted in the law? If the land was open for application before that was done, then the section can subserve no good purpose and becomes a snare and a delusion.

If appellee's contention is correct in this case, then it must necessarily follow that the same construction would hold under the Act of 1901 under which lands are now being sold, as that act contains practically the same provision as did the former, the filing being with the clerk instead of the Commissioner.

· *Jenkins & McCartney,* for appellee.—Section 6 makes it the duty of the Commissioner to notify the clerk of the proper county of the valuation fixed by him on each section of land, which he offers for sale. This notification is not the offer. The offer must be prior to or at least contemporaneous with the notification. There is nothing in this section which in specific terms requires the clerk to "file" this notice. It is made the duty of the clerk (1) to keep this notification in his office; (2) to record it in a well bound book, and (3) to keep said book open to public inspection. All of these things are as necessary to be done by the clerk in order to put the land on the market and to keep it on the market as is the "filing," which is required, if at all, only by implication. Yet no one, we presume, would seriously contend that if the clerk should take or suffer to be taken from his office the notification, the land would thereby be withdrawn from the market, or that his delay in recording said notice withheld the land from the market.

What is meant by the expression "which he offers for sale," occurring in this section 6? The previous section shows how the Commissioner may "offer" school land for sale. Section 1 puts said land upon the market under the provisions of said act. These provisions, in so far as they relate to putting land on the market, are (sections 3 and 4) that the Commissioner shall require all lands not heretofore classified to be "carefully and skillfully classified and valued" by agents appointed by him, and when such classification and valuation are approved by him they are to be filed in the General Land Office as a part of the records of his office.

Section 5 declares that where any portion of said land has been classified to the satisfaction of the Commissioner (the evidence of which is his approval indorsed thereon, which, together with such classification and valuation have been filed in the Land Office), such lands shall be subject to sale. What lands? The lands so classified and valued. Subject to sale when? When these things have been done. "Such lands shall be subject to sale" is equivalent to saying that said lands are thereby offered for sale, or put upon the market for sale. This section 5 of the Act of 1895 is re-enacted by the amendment of 1897 (see article 4218f.) No other section of either the Act of 1895 or the amendment of 1897 uses any expression as to such lands being put upon the market at any time or in any manner, except where sales have been forfeited. Had it been the intention of the Legislature that these lands should not be subject to sale until the clerk had filed the notification as to value, would not the Legislature have said so? The Legislature did so say in the Act of 1879 and 1881 in reference to the notice to the surveyor to be given by the Commissioner of the Land Office. Act of 1879, sec. 5, p. 24; of 1881, sec. 5, p. 120. The reason for that was the surveyor was the person designated to receive the applications. Nothing of the kind has ever been in the statute since the Act of 1887, which made the Commissioner the agent of the State to receive the applications to purchase. All of the acts since that date have used the identical expression of the Act of 1897,

viz: "When any portion of such lands have been classified to the satisfaction of the Commissioner, such lands shall be subject to sale."

As to the second question certified by the Court of Civil Appeals, we think it is clearly settled under previous discussions and under the certified facts of this case, that the appellee acquired a right to the land in controversy even though the land may not have been on the market prior to filing said notice by the clerk. These facts are: (1) The land was classified and appraised by the Commissioner of the Land Office August 21st. (2) The appellee made his application to purchase on August 23rd, at 12.05 p. m. (3) Said notification was filed by the clerk of Concho County August 23d, at 12.45 p. m. (4) Appellee's application was accompanied by his obligation for the proper amount on the same day he made his first payment to the Treasurer. (5) Appellee's application was passed on by the Commissioner on October 8, 1897. (6) At that time there was no other legal application in the Land Office to purchase said land, for although appellant applied to purchase said land on August 23d, he did not make his first payment until November 2d. For authorities on the first question, see Cordill v. Moore, 43 S. W. Rep., 300, 17 Texas Civ. App., 217; Pardee v. Adamson, 46 S. W. Rep., 44; 19 Texas Civ. App., 263. On second proposition see: Coates v. Bush, 56 S. W. Rep., 619, 23 Texas Civ. App., 139; Hazelwood v. Rogan, 67 S. W. Rep., 80, 95 Texas, 295; McGee v. Corbin. 70 S. W. Rep., 79; Jennings v. De Cordova, 20 Texas, 508.

BROWN, Associate Justice.—Certified questions from the Court of Civil Appeals of the Third Supreme Judicial District, as follows:

"Appellee W. T. Brown in an action of trespass to try title recovered of appellant Ford section 204, State school land, located under certificate to Beattie, Seale & Forwood, in Concho County, Texas.

"Appellee claimed under a rejected application to purchase, made August 23d, 1897. The original petition was filed October 25, 1898. Pending the suit appellee sold his interest in the land to John Reed, but the suit was prosecuted to judgment in the name of the original plaintiff.

"Appellant claimed under an accepted application to purchase the section in suit as additional land to his home section No. 2, H. T. & B. R. R. Co., in Concho County, said application also being made August 23, 1897, but filed some hours later than the application of appellee.

"Special issues were submitted to the jury, and, based upon their verdict, the court made the following findings of fact:

" 'First. I find that the land in controversy was duly classified August 21, 1897, as dry grazing land, and appraised at $1 per acre, and that this classification and appraisement was filed in the office of the county clerk of Concho County, Texas, at 12:45 p. m., August 23, 1897, as per file mark thereon.

" 'Second. I find that plaintiff on August 23, 1897, made application to purchase the land in controversy as an actual settler thereon; that said application was in due and legal form and was accompanied by the obli-

gation of plaintiff for 39-40 of the purchase price of said land, which obligation was in all respects in due and legal form, and that said application and obligation was filed in the General Land Office of Texas at 12:05 o'clock p. m., August 23, 1897, as per file mark thereon.

" 'Third. I find that plaintiff made his first payment on the land in controversy, as required by law, as per finding of the jury, which finding is adopted. (The finding of the jury was that this payment was made on August 23, 1897.)

" 'Fourth. I find that at the time that plaintiff Brown made his application to purchase the land in controversy, he was an actual settler thereon, as found by the jury, which finding I adopt.

" 'Fifth. I find that the only evidence as to the hour, minute and day of the filings of the applications of plaintiff and defendant for the purchase of section 204 and section 2, is the file mark on said papers, and that the only evidence in this case as to the time the classification and appraisement of the lands, sections 204 and 2, was filed in the office of the county clerk of Concho County, Texas, is the file mark thereon, and that according to said file marks, plaintiff's application was filed August 23, 12:05 o'clock p. m., and defendant's application to purchase sections 204 and 2 was filed at 4:29 o'clock, August 23, 1897.

" 'Sixth. I find that plaintiff during the pendency of this suit sold the land in controversy to John Reed, who immediately took possession thereof, and has ever since occupied the same as a home, and that he acquired the same with the purpose and intention of making his home thereon, but that he has never recorded his deed and filed the same with the Land Office.

" 'Conclusions of Fact as to Defendant.—First. I find that section No. 2, H. T. & B. R. R. Co., in Concho County, Texas, was on September 14, 1895, classified as dry grazing land and appraised at $1 per acre.

" 'Second. That on August 21, 1897, defendant Ford made application, which is in due and legal form, to purchase section 2, H. T. & B. R. R. Co., as an actual settler thereon, and that his obligation for 39-40 of the purchase price thereof, which was in due and legal form, together with said obligation, was filed in the General Land Office of Texas at 4:29 o'clock p. m., August 23, 1897, as per file mark thereon.

" 'Third. That defendant made the first payment on section 2, H. T. & B. R. R. Co., to the Treasurer of the State of Texas.

" 'Fourth. That section No. 2, H. T. & B. R. R. Co., was awarded defendant Ford October 9, 1897.

" 'Fifth. That all interest due by defendant on section 2, H. T. & B. R. R. Co., to November 2, 1902, has been paid by defendant Ford.

" 'Sixth. That on August 23, 1897, at —— o'clock p. m., Henry Ford made and filed in the General Land Office his application and obligation to purchase section 204, the land in controversy, as additional land to section No. 2, H. T. & B. R. R. Co., and that said section 204 is within a radius of five miles of said section 2, and that his application and obligation for said section 204 is in due and legal form.

" 'Seventh. That defendant Ford made the first payment on section 204 to the State Treasurer. (The jury found that this payment was made on November 2, 1897.)

" 'Eighth. That the Commissioner of the General Land Office of Texas, on the —— day of ———, 1897, awarded to defendant Ford said section 204, as additional land to said section 2.

" 'Ninth. That defendant has paid to the State Treasurer all interest on section 204 to November 2, 1902.

" 'Tenth. That on April 4, 1901, Henry Ford made and filed in the General Land Office of Texas proof of three years' occupancy of section No. 2, the home section.'

"The foregoing findings of fact, with the addition of the facts as therein found by the jury, we approve.

"The court upon these findings of fact rendered judgment for the land sued for in favor of the plaintiff Brown. It is insisted, under proper assignments of error, that the application of the plaintiff Brown conferred no rights upon him, because it appears to have been filed in the General Land Office before the classification and appraisement was filed with the county clerk of Concho County, where the land was situated.

"Appellant relies upon the decision of the Supreme Court in the case of Willoughby v. Townsend, 93 Texas, 80, which is in line with the decision in Gracey v. Hendrix, 93 Texas, 26.

"Appellee relies upon the expressions contained in the case of Hazlewood v. Rogan, 95 Texas, 295. We note that in the case of Steward v. Wagley, 29 Texas Civ. App., it is suggested by the Court of Civil Appeals of the Second district that the distinction between the case of Hazlewood v. Rogan and the other cases cited may be based upon the fact that in the one case the land was awarded by the Land Commissioner, no other superior application having been filed, while in the others the applications were rejected.

"Upon the above statement and findings of fact the Court of Civil Appeals of the Third Supreme Judicial District of Texas, certifies to the Supreme Court of Texas the following questions:

"1. Was the section of land in suit subject to sale, as provided by Rev. Stat., art. 4218f, until the county clerk of Concho County had been notified of the valuation placed on said section, as provided by Rev. Stats., art. 4218g?

"2. If said land was not subject to sale until said clerk had been so notified, could appellee acquire any interest or title in said land by virtue of his application filed in the General Land Office forty minutes before such notice was received by the county clerk of Concho County, said application having afterwards been rejected by the Commissioner of the Land Office?"

Answer to the first question: The land was not on the market for sale until the notice of the valuation placed upon it was received by the county clerk of the county in which it was situated.

Art. 4218f, Rev. Stats., contains this provision: "When any portion of the said land has been classified to the satisfaction of the Commissioner of the General Land Office under the provision of this chapter on former laws, such land shall be subject to sale," etc. Art. 4218g of the Rev. Stats., reads as follows: "It shall be the duty of the Commissioner of the General Land Office to notify in writing the county clerk of each county of the valuation fixed upon each section of land in his county, and in each county attached to it for judicial purposes, which he offers for sale, which notification shall be kept by the clerk in his office and recorded in a well bound book, which shall be open to public inspection." By the language "such land shall be subject to sale," taken in connection with article 4218g, the Legislature intended to express that when classified the Commissioner of the General Land Office should have power to make sale of it in the manner and by the means prescribed by law. The law itself makes the offer of sale of the land by the action of the Commissioner in giving notice to the clerk. The clause, "which he offers for sale," means that the land described in the notice is thereby offered to the public for sale. If we were to construe the language quoted from article 4218f as putting the land upon the market without appraisement, it would be impossible for a purchaser to comply with the law in making his obligation and depositing the advanced payment, because he would not be informed as to the valuation affixed to the land, therefore could not know in what sum to make his obligation or what amount to deposit. The specific requirement of the statute as to the manner in which the application shall be made necessarily implies that the valuation of the land should be determined before the application is presented, and considering the provisions of article 4218g, in connection with such requirements, we think it was the intention of the Legislature, by requiring notice to be given to the county clerk of the valuation, to afford all persons equal opportunity to purchase.

In the case of Willoughby v. Townsend, 93 Texas, 80, the controversy was over a tract of land which had once been sold and for nonpayment of interest the contract had been forfeited to the State. A party desiring to purchase the land made application for it before notice of the valuation was sent to the clerk of the county. It was contended in that case, as in this, that it was not necessary that the notice should be given of the valuation to the clerk before application could be made, but this court held that, the land having been once taken off the market by sale, it was necessary that it should be placed upon the market again which was provided for by article 4218g, requiring the Commissioner of the General Land Office to give notice to the clerk of the county of the value placed upon it. The application which was made before the clerk received that notice was held to confer no right upon the applicant. The court said: "The language italicized implies that the land is to be again placed upon the market. The Commissioner is the officer who is to take this action, and he is required by section 6 to do so by giving notice to the county clerk of each section which he offers for sale." We believe that decision

was correctly made, and we can see no difference in the terms of the statute which required the land to be placed upon the market in the first instance and the placing it *again* upon the market after it had been once sold and the sale forfeited. We regard Willoughby v. Townsend as decisive of this question.

Answer to the second question: As against one who applied to purchase the land after the notice had been received by the clerk the appellee did not acquire any right or title in the land by his application which was prematurely made.