## J. E. JONES v. J. H. LOHMAN.

Decided June 22, 1904.

**1.—School Land—Lease—Cancellation—Reletting.**

A new lease, made by the Commissioner of the General Land Office, of school land already held by the same tenant under a valid lease on which there had been no default authorizing its cancellation was unauthorized and void.

**2.—Lease—Expiration of Term.**

The courts will follow the construction given by the General Land Office to its leases of school land, holding that the day of their execution is excluded from the computation in determining when they expire.

**3.—Same.**

A lease of school land on November 15, 1897, for five years, expired at midnight of November 15, 1902.

**4.—Lease—Purchase—Premature Application.**

Where a lease of school land did not expire till midnight of the day on which application to purchase the land was filed, the application was premature, and the land could not be awarded to the applicant by the Land Commissioner where, before he acted on the sale and after the lease had expired, another had applied to purchase it.

Appeal from the District Court of Tom Green. Tried below before Hon. J. W. Timmins.

*E. Cartledge,* for appellant.

*E. B. Cozzens, L. H. Brightman,* and *G. H. Goodson,* for appellee.

FISHER, CHIEF JUSTICE.—This is an action of trespass to try title by appellant for certain tracts of school land awarded to appellee by the Commissioner of the Land Office. The findings of fact and conclusions of law of the trial court are as follows:

"1.   That the lands in controversy, the west half of section 54, block LL, certificate No. 41508, and all of section No. 56, block LL, certificate No. 41509, each in the name of the G. C. & S. F. Ry. Co., and section No. 100, in block LL, certificate No. 324, in the name of T. C. Ry. Co., all situate in Schleicher County, were surveyed for the public free school fund of the State of Texas, and that each of said sections, prior to September 1, 1902, were regularly classified by the Commissioner of the General Land Office as dry grazing lands and valued at $2 per acre. The notice of said classification and valuation having been regularly sent to the county clerk of Schleicher County, who had listed the classification and valuation of said lands in accordance with the said notice.

"2.   Said lands were by the Commissioner of the General Land Office, by lease contract No. 21321, dated February 14, 1898, with other lands, leased to Mills & Primm for a term of five years from the 15th day of November, 1897, at the rate of 3 cents per acre per annum, and the first installment of rent due on said lease contract was regularly paid, but no subsequent annual rental under said contract was ever paid.

"3.   Said lease contract was assigned and transferred by said Mills &

Primm to Hector McKenzie, who on December 12, 1898, made an application to re-lease said lands with other lands for a term of ten years from that date. On December 17, 1898, the Commissioner of the General Land Office notified said McKenzie that he would accept his application for said lands and issue a lease contract for same, if he, the said McKenzie, would pay the first annual rental due on said application together with the back rental which had accrued on said lease contract No. 21321 within thirty days from that date. On January 13, 1899, said McKenzie paid the first annual installment of rent due on said application together with the back rental which had accrued on said lease No. 21321, and on January 19, 1899, the Commissioner of the General Land Office issued a new lease, No. 25907, to said Hector McKenzie for a term of ten years from December 17, 1898, and indorsed on said application lease 'Awarded Dec. 17, 1898,' said lease contract covering the lands involved in this suit with other lands.

"4. Said lease contract No. 21321, when the second year's rent due thereon was not paid, was not canceled by the Commissioner of the General Land Office by a writing under his hand and seal, but was treated by the Commissioner of the General Land Office and said McKenzie as canceled; until the subsequent action herein shown to have been taken, the word 'canceled' being indorsed on the file wrapper.

"5. The second, third and fourth annual rentals due under the terms of said contract No. 25907 were each duly paid within sixty days after the same became due each year, under the terms of said contract, so that the rent due on said contract No. 25907, down to December 17, 1902, was paid.

"6. On August 1, 1902, the Commissioner of the General Land Office, without canceling said lease No. 25907 by a writing under his hand and seal, being of the opinion that under the decision of what is known as the Ketner mandamus case, said lease No. 25907 was illegal, because said lease No. 21321 had not been canceled by a writing under the hand and seal of the Commissioner, notified the State Treasurer to transfer and prorate all money which had been paid the State on account of contract No. 25907 to the account of said lease contract No. 21321, which was done, and he marked on the lease void, and directed the Treasurer to apply all payments made under that lease to lease No. 21321, which was done.

"7. On November 15, 1902, the plaintiff, J. E. Jones, who by regular purchase from the State was the owner of and an actual settler upon the east half of said section 54, made his several separate applications to purchase the lands in controversy as additional lands to his home on the east half of said section 54, at the rate of $2 per acre. Said applications were regular in form, and made on blanks prescribed by the Commissioner of the General Land Office, were duly sworn to by said Jones, who executed his obligation as required by law for the unpaid 39-40 of the purchase money for said lands, and said applications were presented to the county clerk of Schleicher County on November 15,

1902, together with 1-40 of the purchase price for said lands in cash, and the filing fees as required by law; and the said clerk indorsed on said applications: 'Filed 15th day of November, 1902, at 8:03 a. m., and duly recorded them, and on the 18th day of November, 1902, transmitted them to the Commissioner of the General Land Office, at which time also the necessary first payment was transmitted to the State Treasurer.

"8.  Said applications to purchase by plaintiff, Jones, were received and filed in the Land Office on November 22, 1902, and on January 9, 1903, the Commissioner of the General Land Office issued his award of sale to the said Jones for the west half of said section 54 and all of said section No. 100, which said award was to take effect and be of date November 15, 1902, and rejected plaintiff Jones' said application for said section 56.  That on January 23, 1903, the Commissioner of the General Land Office canceled the said award of the west half of said section 54 and all of section 100 to said plaintiff Jones, and all of the lands involved in this suit were by the Commissioner of the General Land Office awarded to the defendant Lohman, as hereinafter stated and set forth.  All of said additional lands, as applied for by plaintiff, are situated within a radius of five miles of his home on the east half of said section No. 54.  It is agreed that the sole reason why the Commissioner of the General Land Office finally rejected plaintiff Jones' application for the lands in this suit was because he, the said Commissioner, was of the opinion that said lease No. 21321 was the only valid lease covering said lands, and that in the opinion of the Commissioner, and in accordance with his understanding of the decision of what is known as the mandamus suit of Hazlewood v. Rogan, Commissioner, and after that decision when it was rendered the Land Office had adopted and were enforcing a general rule of construction in all lease contracts which required the exclusion of the day of the date from the life of the lease, that is, the day from which it was to run, said lease No. 21321 did not expire until midnight of November 15, 1902, and that therefore the applications of said plaintiff, Jones, made on said 15th day of November, 1902, were premature.

"9.  On November 15, 1902, the defendant, J. H. Lohman, being an actual settler in good faith on said section No. 56, made an application to purchase same for a home, and at the same time applied for the west one-half of said section 54 and all of said section 100 as additional lands to his said section 56.  These applications by the defendant Lohman were likewise regular in form and made upon blanks furnished by the Commissioner of the General Land Office, were duly sworn to by said defendant, who executed his obligations for the unpaid purchase money at the rate of $2 per acre, and on said 15th of November, 1902, defendant's said applications were presented to the county clerk of Schleicher County, together with one-fortieth of the purchase price of said lands. Said applications were by said clerk indorsed 'Filed November 15, 1902, at 8:04 o'clock a. m.,' and after they were duly filed were transmitted

to the Commissioner of the General Land Office, and the money necessary to make the first payment thereon was transmitted to the State Treasurer. Said applications were received and filed in the General Land Office on November 22, 1902, and on December 17, 1902, were each' rejected by the Commissioner of the General Land Office for the same reason as he rejected Jones.'

"10. On November 22, 1902, the defendant, Lohman, then being an actual settler in good faith on said section 56, refiled on all of the lands in suit by separate applications, said section 56 as additional thereto. These applications were regular in form and were likewise made upon blanks furnished by the Commissioner of the General Land Office, were duly sworn to, and new obligations for the unpaid purchase money at, the rate of $2 per acre were duly made, and the necessary money to make the first payment of 1-40 of the principal was likewise also made. These new applications were presented to the clerk of Schleicher County, and were filed by him at 1:02 p. m. on November 22d, and after they were duly recorded were transmitted to the Commissioner of the General Land Office, and the money necessary to make the first payment thereon was transmitted to the State Treasurer. These new applications by the defendant Lohman were received by the Commissioner and were filed by him on November 24, 1902, and all the lands in controversy in this suit were awarded by the Commissioner of the General Land Office on these new applications on the —— day of January, 1903.

"11. It is agreed that neither of the parties to this suit has since April 19, 1901, purchased from the State any other lands than those involved in this suit, except as to plaintiff, Jones, who has since April 19, 1901, purchased the east half of said section 54, but prior to April 19, 1901, said plaintiff Jones has purchased four other sections from the State, which four sections, soon after his purchase thereof, he had transferred to another party.

"12. The reason why the Commissioner first awarded to Jones the west half of 54 and all of 100, though applied for on the 15th, was that by a mistake in the clerk sending up Lohman's application filed on the 22d, it appeared that he had made his application for the west half of 54 and all of 100 on November 21, 1902, which was before he had made his application for 56, his home section, which appeared to have been made November 22d, and by reason of such a state of facts, the Land Office held that the plaintiff, Jones, applied prematurely, yet there was no intervening rights, and he awarded to Jones on that theory, but afterwards the mistake of the clerk was corrected and the fact made to appear that Lohman's file for the west half of 54 and all of 100 was on November 22, 1902, and therefore he canceled Jones' award as, in his view, having been held, as aforesaid, prematurely made, and awarded the same to Lohman.

"13. It is agreed that in issuing said lease contract No. 21321 and No. 25907, the same form was used as has been in use by the Land Office ever since the school land act of 1895 down to this date.

"14. Any other evidence may be introduced that is competent, and this agreement shall be considered in connection with any papers, documents or archives of the Land Office.

"15. The clauses herein that Jones filed his application with the clerk shall not be so construed as to inhibit the defendant from attacking the same as having been fraudulently so done if competent to so attack it.

"Plaintiff also introduced evidence to show that defendant Lohman had had stock on said land since his application to purchase same, and that the reasonable rental value of same was 6 cents per acre per annum, but there was no evidence that Lohman had had exclusive possession of same, and the evidence showed that plaintiff Jones had stock running on same land.

"Plaintiff introduced evidence that established that he owned all the interest that Hector McKenzie had in the leases mentioned in said agreement of parties introduced as aforesaid.

"Conclusions of Law as Found by the Court.—1. The lease from the State to Hector McKenzie, No. 25907, was void ab initio.

"2. Lease No. 21321 to Mills & Primm continued as a valid lease on said ———.

"3. The Commissioner of the Land Office held in this case that lease No. 21321 did not expire until midnight on November 15, 1902, and there being no sufficient evidence before the court to show that his construction of said lease was wrong, then the presumption is in favor of said holding.

"If the foregoing conclusion is correct, then it follows that files made by plaintiff Jones on November 15, 1902, were premature and could not give him any right, unless said applications were presented to the Land Commissioner for his action before there were any intervening rights, and I hold under the evidence Lohman's rights had intervened, and the Commissioner having awarded the land to Lohman, he is entitled to recover in this suit."

*Opinion.*—The action of the trial court in treating the lease to McKenzie as void was correct, in view of the decisions of the Supreme Court in Ketner v. Rogan, 95 Texas, 559, and especially in the late case of Fish Cattle Co. v. Terrell, 97 Texas, 490. The Land Commissioner held that the original lease No. 21321 did not expire until midnight of November 15, 1902. The lease was executed to continue for five years from the 15th day of November, 1897, and the construction of the Commissioner as to the time in which the lease would expire was in keeping with the general rule announced in the case of Hazlewood v. Rogan, 95 Texas, 295, 4 Texas Ct. Rep., 381, to the effect that under the general rule of law, the day upon which the lease was executed was to be excluded in computing the time that it should continue in operation. In the case of Patterson v. Terrell, 96 Texas, 509, the Supreme Court said: "Since the decision made in Hazlewood v.

Rogan, 95 Texas, 295, the Commissioner of the Land Office has ruled and held that the day on which the lease took effect is to be excluded in computing the time for which it will run."

The facts in the record, in addition to what is said by the Supreme Court in the Patterson case, show that the Commissioner had in fact followed the general rule announced in the Hazlewood-Rogan case in determining the time in which the original lease involved in this suit should expire. The Hazlewood-Rogan case was decided in March, 1902. The trial court correctly held that the application to purchase relied upon by the appellant Jones was premature, and as the appellee's rights had intervened prior to the time that the Commissioner acted on the appellant's application, that the latter acquired no superior right to the appellee Lohman. This ruling was correct. At the time that the appellant applied to purchase the land was not on the market, the conditions not having arisen, and the time not having expired that would authorize the Commissioner of the Land Office to cancel the original lease.

The appellant made no subsequent application after the land was placed on the market for sale; and at the time that the Commissioner acted upon his application, the appellee, Lohman, had made and filed, after the land was subject to purchase, a proper application for the same. Lohman's right was then pending and intervening, and created in him such a right as would prohibit the Commissioner of the Land Office from accepting and acting favorably upon the premature application of the appellant then on file in the Land Office. Ford v. Brown, 7 Texas Ct. Rep., 523, 96 Texas, 537.

We find no error in the record, and the judgment is affirmed.

*Affirmed.*

Writ of error refused November 17, 1904.