CURRY v. MARSHALL.  (No. 494.)

(Court of Civil Appeals of Texas.  El Paso.
Nov. 24, 1915.  Rehearing Denied
Dec. 16, 1915.)

1. PUBLIC LANDS ☞173 — SCHOOL LANDS—
FAILURE TO REPURCHASE — RESALE—FIXING
DAY—DUTY OF LAND COMMISSIONER.

Where the purchaser of school land, forfeited for failure to pay interest as provided for by Rev. St. 1911, art. 5423, failed to exercise his repurchase right after having given notice to the Commissioner of the General Land Office, as provided for by Vernon's Sayles' Ann. Civ. St. 1914, art. 5423a, it was the Commissioner's duty in reselling the land under Rev. St. 1911, art. 5423, providing for such resale under that section or any future law, to fix a day for such resale at a date not less than 90 days after the expiration of such repurchase period on analogy to his duty so to do in the case of canceled leases provided for by Rev. St. 1911, art. 5408, and the provision of the last-named section placing expired leases on the open market at the date of their expiration has no application.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. ☞173.]

2. PUBLIC LANDS ☞173 — SCHOOL LANDS —
FAILURE TO REPURCHASE—RESALE—APPLICATION TO PURCHASE—VALIDITY.

Where in an action of trespass to try title it appeared that plaintiff bought public free school land, but failed to meet interest when due on the unpaid balance of the purchase price, whereupon the land was declared forfeited by the Commissioner of the General Land Office, who informed the county clerk of such failure; that thereupon plaintiff advised the Commissioner of his intention to repurchase under his right so to do within 90 days provided for by Vernon's Sayles' Ann. Civ. St. 1914, § 5423a; that the board of appraisers appraised the land and notified plaintiff, who failed to exercise his repurchase right within 90 days; that some months later the Commissioner published and sent out his list of free school land, in which was listed the land in question as coming on the market at a day fixed at three months after the issuance of the list; that on the day preceding the day fixed for the sale the Commissioner approved the previous classification and appraisement, and mailed a copy thereof to the county clerk, who received it on the morning of the day set for the sale; that on the previous day plaintiff had filed an application to purchase the land, and after the day set for the sale plaintiff and defendant each on the same day filed applications to purchase, and the land was subsequently awarded to defendant, who had made the high bid; that more than 90 days after the date set for the sale and after the award to defendant, plaintiff filed still another application, which was rejected because of the award to defendant—held, that the land did not automatically come on the open market upon the expiration of the 90-day repurchase period entitling plaintiff to an award as first applicant under his application made on the day previous to the day fixed for the sale.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. ☞173.]

3. PUBLIC LANDS ☞173 — REPURCHASE —
PRIVILEGE—NONEXERCISE—RESALE—FIXING
DAY—PROPER TIME.

The Land Commissioner was not compelled to name a day for such resale after the expiration of plaintiff's repurchase period not less than 90 days after the receipt of notice by the county clerk of the reclassification and reappraisement of such land, since, the land being already classified and appraised at the time of the expiration of plaintiff's repurchase period, it was not necessary, on analogy to the provision of Rev. St. 1911, art. 5408, for notice to the clerk of the cancellation of leases and the setting of a day not less than 90 days thereafter for the filing of purchase applications, that a reclassification and reappraisement be made and the clerk notified thereof.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. ☞173.]

4. PUBLIC LANDS ☞173 — FORFEITURE—RESALE—REJECTED APPLICATION—TRYING TITLE.

Since the law does not fix any definite date when school land, offered for sale after failure to exercise a repurchase privilege, will come on the market, but gives the Land Commissioner power to fix a day, plaintiff was not entitled to an award on his last-made application for the purchase of such land, since, if the date set by the Commissioner was legal, such application came too late, and, if illegal, it stood on no better footing than the application of defendant, to whom the land was awarded.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. ☞173.]

Appeal from District Court, Midland County; S. J. Isaacks, Judge.

Action by A. F. Curry against Elmer Marshall.  Judgment for defendant, and plaintiff appeals.  Affirmed.

Chas. Gibbs, of Midland, for appellant.  J. M. Caldwell, of Midland, for appellee.

HIGGINS, J.  [1] Curry brought this suit in trespass to try title to recover section 46 in block 39, township 4 south, Texas & Pacific Railway Company original grantee, situate in Midland County.  The case was tried before the court upon an agreed statement of facts.  The agreed facts were embodied in findings of fact filed by the trial court.  From same it appears that the facts material to a consideration of the questions presented are as follows:

On July 27, 1901, the land in controversy was duly classified as grazing land, and appraised at $2 per acre by the Commissioner of the General Land Office, and thereafter, on July 1, 1909, the same was by him reappraised at $3, which reappraisement was duly entered by the county clerk of Midland county.  The land, being public free school land, was regularly sold and awarded to Louis A. Smith on February 23, 1910, by the Commissioner of the General Land Office for the sum of $6.22 per acre.  A. F. Curry by conveyance became the owner of the same, subject to the payment of the unpaid purchase money due the state, and upon the record of the General Land Office he was regularly substituted as the purchaser thereof.  He continued to own same until the forfeiture of his purchase as hereinafter stated.  The interest installment upon the purchase money due the state by Curry falling due November 1, 1912, not being paid, the Commissioner of the General Land Office on July 12, 1913, forfeited the sale to Curry for his failure to pay such interest, and forthwith gave notice thereof to the county clerk of Midland county.  Within 30

---

days from the date the clerk received such notice Curry advised the Land Commissioner that he desired to repurchase the land, exercising his preference right so to do under chapter 160, General Laws 33d Leg. (Reg. Sess.) p. 336 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5423a–5423f). The board of appraisers appraised the land at $4 per acre, and on September 21, 1913, notified Curry thereof. Curry failed to exercise his right to repurchase the land within 90 days from the date he received notice of such appraisement. On May 19, 1914, the Land Commissioner published and sent out his list of free school land on the market and coming on the market from July 1, 1914, to December 31, 1914, which list contained the land in controversy, advertising the same as grazing land, appraised at $4 per acre, and as coming on the market August 20, 1914. On August 18, 1914, the Land Commissioner approved said classification and appraisement, and mailed a copy thereof to the county clerk of Midland county, fixing August 20, 1914, as the date upon which the land would come on the market, which classification and appraisement was received by the clerk on August 20, 1914, at 7:45 a. m., and was duly filed and entered in compliance with the law on said date. On August 19, 1914, Curry filed in the General Land Office his application to purchase the land at $4 per acre, which application was accompanied by the obligation, in regular form, and the cash payment required by law in such cases. This application was rejected by the Commissioner as being premature. On August 21, 1914, Curry and Elmer Marshall, the appellee, each filed applications to purchase the land, Curry bidding $4.10 per acre, and Marshall $4.50 per acre, each of said applications being made in the form prescribed by law. The cash payment required by law accompanied the application made by Marshall, as well as the said application made by Curry. Marshall's said application to purchase was accepted and the land awarded to him October 15, 1914. On October 5, 1914, the said application of Curry theretofore filed on August 21, 1914, was rejected. On November 30, 1914, Curry filed in the General Land Office another application to purchase the land at $4 per acre, which application was in the form prescribed by law, and was accompanied by the cash payment required in such cases, and on December 7, 1914, this application was rejected because of the previous sale to Marshall. Within 90 days after the date of the award of said land to him, Marshall filed his affidavit of settlement, as required by law. No point is made as to other facts contained in the court's findings, and it is unnecessary to state same.

Upon the facts found, the court rendered judgment in favor of Marshall. Curry makes two contentions in the case, the first being stated in his brief as follows:

"First. That the land was not upon the market subject to sale until the expiration of 90 days from the date, to wit, August 20, 1914, that the clerk received the notice from the Land Commissioner replacing said land upon the market to open bidders, and therefore appellant's application, filed on November 30, 1914, should have been accepted."

And in support of this contention he submits the following proposition:

"Where, under the Preference Right Act of 1913, state school lands are forfeited for failure to pay interest, and the owner thereof at the date of the forfeiture fails to exercise his right to repurchase within ninety days after notice of classification and appraisement of his land, the Land Commissioner is required to place said land upon the open market by notifying the county clerk of that fact, and fixing a date not less than 90 days thereafter on and after which applications to purchase may be filed."

Appellant's second contention is that:

"At the expiration of 90 days from the date he was notified of the revaluation placed upon said land by the said land board, he having failed to exercise his preference right to repurchase within said time, the land came upon the open market, and therefore appellant's application first filed in the Land Office should have been accepted."

It is thus noted that the substance of appellant's contention is:

First. That the land was not upon the market subject to sale until 90 days after the county clerk received on August 20, 1914, the classification and appraisement of the land made by the Land Commissioner on August 18, 1914; therefore the application of Marshall filed August 31, 1914, was premature, and conferred no title, and appellant's application filed on November 30, 1914, after the expiration of such 90-day period, should have been accepted by the Commissioner and the land awarded to him.

Second. If the land was upon the market subject to sale prior to the expiration of said 90-day period, then it was so upon the market on August 19, 1914, when Curry's first application was filed, and the same should have been awarded to him thereon, he being the first applicant.

Article 5423, Revised Statutes (referring to unpaid purchase-money obligations covering school land purchases), provides that, upon default in payment of any interest installment upon any obligation then unpaid, the Commissioner of the General Land Office should indorse on such obligation "Land forfeited," and cause an entry to that effect to be made on the account kept with the purchaser, and thereupon the land would be forfeited to the state, and should be resold under the provisions of that chapter or any future law. By virtue of this article section 46 became subject to resale to any qualified purchaser, but its status in this respect was subject to the contingency that it would be withdrawn from sale if Curry, within 30 days after receipt by the county clerk of the notification of such forfeiture, should notify the Land Commissioner of his wish to repurchase the land. Act April 18, 1903 (chapter 160, General Laws 33d Legislature, p. 336),

being articles 5423a to 5423f, Sayles' Revised Statutes 1914. Under the provisions of this act, Curry notified the Commissioner of the General Land Office of his desire to repurchase, and thereby the land was withdrawn from the market, and a preference right to repurchase the same was created in his favor, which right continued in existence until 90 days after September 21, 1913, upon which date Curry was notified of the reappraisement of the land made by the board of appraisers.

Having failed to consummate a repurchase within the time limited, Curry's right lapsed on December 20, 1913, and the land again became subject to sale to any qualified purchaser, and under the fourth section of the act mentioned, it then became the duty of the Land Commissioner to place the land on the market for sale as is provided by law for the sale of leased land. The manner of placing leased land upon the market is governed in part by article 5408, Revised Statutes, which has reference to the publicity to be given by the Commissioner of leased land which is to be sold. It requires the Commissioner to give notice to the county clerk of the expiration date of leases, which notice is to be given 90 days before the date of expiration. When a lease is canceled for any cause, the land is not subject to sale for 90 days thereafter, and the Commissioner is required to give notice to the county clerk of such cancellation, and to fix a date not less than 90 days thereafter on and after which applications to purchase may be filed. All notices of expirations and cancellations are required to be recorded. The Commissioner is required to adopt such means as may be at his command that will give the widest publicity as to when land will be on the market for sale by reason of a lease expiration; such publicity, when practicable, to be given 90 days in advance of the expiration. Upon the cancellation of a lease the same publicity to the fact was to be given as with reference to publicity of expirations.

It is to be noted in the case of a canceled lease that the Land Commissioner by this article is given the authority to defer until a future day the date upon which the land would come upon the market so as to afford him an opportunity to give due publicity of the fact that the land is subject to resale. In the case of a lease expiration no such authority is given, and the land is upon the market at the date of expiration, but due publicity of this fact is obtained by the requirement that the Commissioner shall give the county clerk previous notice of the expiration date, and adopt such means as may be at his command so as to give the widest publicity as to when the land will be on the market by reason of the lease expiration, which previous notice to the clerk and publicity is to be given 90 days, when practicable, in advance of such expiration.

It is manifest that the provisions of article 5408 relating to the publicity features to be given in the case of lease expirations can have no application. If it be held that Curry's land was upon the open market, subject to sale at the expiration of his 90-day preference right period, it would be impossible to give any publicity whatever to such fact, and prospective purchasers could have no advance notice that the land would come upon the open market. The Land Commissioner could not foresee, and would not be authorized to assume, that the land would not be repurchased by Curry. He therefore could not give advance notice to the clerk and adopt other means of publicity if the land be regarded as coming upon the open market and subject to sale to the first qualified purchaser, after the expiration of Curry's 90-day period on December 20, 1913. We think it manifest that the provisions of article 5408 relating to lease expirations can have no application. On the contrary, to give practical effect to the publicity features required by the article, it must be held that the Commissioner was authorized and required to proceed in the manner provided in lease forfeitures. He was therefore authorized to defer until a future day the date upon which the land was to come upon the market and be resold. We think this date must be fixed not less than 90 days after December 20, 1913; that the expiration date of Curry's preference right period should be considered as corresponding to the cancellation date of a canceled lease. In both instances this is the date upon which the land is freed from outstanding claims, and, in an inchoate sense, becomes subject to sale.

[2] Thus the Commissioner is afforded an opportunity to give the publicity required by article 5408 of the fact that the land will be upon the market at a future date. So we conclude the Commissioner was authorized to fix a date upon which the land would come upon the market. It appears that he did this 90 days prior to the date he designated by publishing and sending out on May 19, 1914, a list of land on the market and to come upon the market, which list contained the Curry land, classified, appraised, and advising that it would come on the market August 20, 1914. This being true, the land was not in any event upon the market until the date designated, and the application of Curry filed August 19, 1914, was prematurely made, and was properly rejected by the Commissioner. Article 5408 Revised Statutes: Erp v. Robison (Sup.) 155 S. W. 180; Adams v. Terrell, 101 Tex. 331, 107 S. W. 537; Boswell v. Terrell, 97 Tex. 259, 78 S. W. 4; Willoughby v. Townsend, 93 Tex. 80, 53 S. W. 581; Ford v. Brown, 96 Tex. 537, 74 S. W. 535.

Passing now to the publicity required to be given by the Commissioner in case of canceled leases, it is observed that article 5408 requires that:

(1) "When a lease is for any cause canceled, he shall notify the county clerk of that fact and fix a date not less than 90 days thereafter on

and after which applications to purchase may be filed."

(2) "Immediately after the cancellation of a lease or leases the Commissioner shall proceed to give publicity to the fact, the same as is herein required with reference to publicity of expiring leases."

As to the second requirement, it is obvious that due publicity was given by the publication of May 19, 1914. While this was some time subsequent to the expiration of Curry's preference right period, it must be assumed that it was the earliest it was practicable to make the publication; and, in any event, such delay in making the publication would not affect the validity of the award to Marshall.

[3] As to the first requirement, it can mean no more in this case than that the Commissioner, upon the expiration of Curry's preference right period, should have notified the county clerk of the fact that Curry had not exercised his right to repurchase, and fixed a date not less than 90 days thereafter on and after which applications to purchase might be filed. The land being already classified and appraised, it was immaterial whether or not a reclassification and reappraisement was made and notice thereof given to the clerk. Such classification and appraisement had been made prior to the sale to Smith in 1910. Under the law a reclassification and reappraisement was not necessary. There is therefore no merit in appellant's contention that the Commissioner could not name a day upon which the land would come upon the market less than 90 days after the county clerk had received notice of the reclassification and reappraisement of Curry's lands.

[4] Whether or not the validity of the designation of August 20, 1914, as the day upon which the land would come upon the market was affected by the failure of the Commissioner to give 90 days' previous notice to the county clerk of the fact that Curry had not exercised his right to repurchase, and of the day which he designated as the date upon which the land would again come upon the market, is of no consequence, so far as concerns Curry's right to recover herein. In any event, he could not recover. This is apparent when we consider that the law does not undertake to fix any definite date when the land will come upon the market; it is the Commissioner who fixes the same. He fixed August 20, 1914, and, if he did not lawfully so designate same, because of his failure to give at least 90 days' previous notice to the county clerk, of the reclassification and reappraisement, and of the fact that August 20th was the date upon which the land would come upon the market, then no date has ever been lawfully designated. In the case of a canceled lease the land does not come upon the market, except upon the date designated by the Commissioner, and that is the rule which must be applied in this case. If such

be the case, then Curry's application, filed November 30, 1914, could have no higher standing than Marshall's, filed August 21, 1914. They both must rest upon the Commissioner's designation of August 20th as the date on and after which the land would be upon the market. Curry must recover upon the strength of his own title, and his right under his last application must necessarily be affected with any vice which would inhere in Marshall's title by reason of any informality upon the Commissioner's part in designating August 20th. We do not desire to be in any wise understood as intimating that such date was not lawfully designated, and the land lawfully placed upon the market on said date. We are simply holding that, if it was lawfully done, then the land was properly awarded, and title passed to Marshall upon his application filed August 21st, his bid being higher than the Curry bid of same date, and, upon the other hand, if the designation was not lawfully made, then any right under Curry's application of November 30, 1914, would necessarily be affected with any vice inherent in the Marshall title, and, since Curry must recover upon the strength of his own title, judgment was properly rendered against him from this viewpoint of the case.

Affirmed.